McDANIEL *v.* CAMPBELL, WYANT & CANNON FOUNDRY.

1. WORKMEN'S COMPENSATION—SILICOSIS—STATUTORY MAXIMUM.
   The imposition of a maximum limit of $10,500 as to amount of workmen's compensation payable for silicosis and dust diseases did not effect an unreasonable classification, or a denial of the equal protection of the laws, where, although a lower maximum than for other occupational diseases or injuries, it appears silicosis occurs in relatively few industries, that the cost of unlimited workmen's compensation insurance therefor would be prohibitive and that workers afflicted with silicosis are more readily employable in other occupations than workers suffering from other compensable injuries or disabilities (CLS 1956, § 417.4).

2. SAME—SILICOSIS—TIME OF EXPOSURE—STATUTORY MAXIMUM.
   The limitation of $10,500 as maximum amount of workmen's compensation payable for death or disability due to silicosis was intended to apply whether all or only some of the exposure to conditions causing the disease was following adoption of the amendment of the workmen's compensation act so limiting the employer's liability (CLS 1956, § 417.4).

---

REFERENCES FOR POINTS IN HEADNOTES

[3] 15 Am Jur, Damages §§ 148, 199.
    58 Am Jur, Workmen's Compensation § 327 *et seq.*
[4] 14 Am Jur, Courts § 130; 58 Am Jur, Workmen's Compensation § 484 cum supp.
[5] 14 Am Jur, Costs § 98.

3. Same—Medical Expense—Reimbursement.

Provision of workmen's compensation act that the employee entitled to benefits "shall be reimbursed for the reasonable expense incurred by or on his behalf in providing" reasonable medical, surgical, and hospital services and medicines or other attendance or treatment requires the employer to make payment of such sum whether the employee has been legally subjected to payment therefor or not (CLS 1956, § 412.4).

4. Same—Interest on Award.

Rule of law by Supreme Court whereby old rule that no interest was allowable on an award of workmen's compensation is overruled is construed prospectively so that awards made after award on which majority of Supreme Court declared interest should be allowed should also bear interest (Carr, C. J., and Kelly, J., dissenting).

5. Costs—Workmen's Compensation—Statutory Maximum—Interest.

No costs are allowed on appeal from order affirming liability of the employer for death due to silicosis with interest thereon, but modifying the award by applying statutory maximum, since neither party has prevailed in full.

Appeal from Workmen's Compensation Appeal Board. Submitted October 18, 1961. (Docket No. 68, Calendar No. 49,191.) Reargued June 14, 1962. (Docket No. 60.) Decided September 7, 1962. Certiorari denied by supreme court of the United States January 21, 1963.

Joel McDaniel presented his claim against Campbell, Wyant & Cannon Foundry Company, employer, and Michigan Mutual Liability Company, insurer, for workmen's compensation because of disability from silicosis. Award to plaintiff. Defendant appeals. Affirmed in part and reversed in part to apply silicosis liability limitation.

*Marcus, McCroskey, Finucan, Libner & Reamon* (*Jerry S. McCroskey,* of counsel), for plaintiff.

*Amberg, Law & Fallon* (*Francis X. Fallon, Thomas A. Ryan, Jr.,* and *Roger Law,* of counsel), for defendant.

Dethmers, J.   Defendants appeal from what they apparently deem to be, *inter alia,* an overruling by the workmen's compensation appeal board of this Court's decision in *Gauthier* v. *Campbell, Wyant & Cannon Foundry Company,* 360 Mich 510.   In that case Mr. Justice Edwards wrote for the entire Court, in part, as follows (pp 512–514, 522–524):

"This appeal seeks to have this Court declare unconstitutional the statutory maximum limitation now placed upon workmen's compensation for industrial silicosis victims.   *   *   *

"The constitutional provisions relied upon by appellant are:

" 'No State shall   *   *   *   deny to any person within its jurisdiction the equal protection of the laws.' US Const, am 14, § 1.   *   *   *

"The inequality complained of is that the maximum set for victims of death or disability due to silicosis is a different and lower maximum than that set for death or disability resulting from other compensable injuries or diseases.   Hence, appellant argues that she is the victim of an arbitrary and unreasonable classification.   *   *   *

"The legislative scheme as exemplified in the silicosis amendments included both monthly gradations and overall maximum limitations on benefits designed to lessen the economic impact on industry of accumulated exposure.

"This was recognized in the portion of the opinion of the appeal board upon which appellant depends:

" 'The limitation in section 4 arose out of the original fear of accrued liability in dust disease cases.   The special treatment of such cases was certainly reasonable in the beginning.   However, more than 21 years have passed since that time.   Without question the purpose of the limitation is obsolete.' *   *   *

"In this case, we deal with a compensation claim based upon an employment of 23 years' exposure to silica dust in a foundry.   *   *   *   For 19 of these

years of exposure, there was no law which provided
any form of recovery for the disease which ultimate-
ly killed decedent as to the occupation in which he
was employed.   *   *   *

"Decedent worked for 4 years after passage of the
statute which first gave him any protection.   *   *   *

"Any argument that the scheme is now 'obsolete' as
to future disabilities must wait consideration on a
record which presents some facts from which it might
be deduced that the legislative reasoning had lost all
value with passage of time and change of circum-
stances."

Plaintiff-appellee says, and the appeal board held,
that this is the case presenting such a record, because
all of his 9 years of exposure to silica dust in de-
fendant's or any employment occurred after the
effective date of PA 1943, No 245, thus involving
no problem of accrued liability, and that, therefore,
application, as in *Gauthier*, of the $10,500 maximum
fixed by CLS 1956, § 417.4 (Stat Ann 1960 Rev § 17-
.223), to plaintiff's case would constitute a denial of
equal protection of the laws and hence be uncon-
stitutional.

In essence, plaintiff says that in *Gauthier* this
Court recognized a basis (accrued liability antedat-
ing the statute) for the classification rendering it and
the limit reasonable there but that that basis is lack-
ing as applied to the facts in the case at bar, and
that, accordingly, the limit is unreasonable and un-
constitutional, if held applicable to his claim.   This
presupposes that the classification has no support in
reason other than that stated in *Gauthier*.   Defend-
ants urge others, however, which plaintiff brushes
aside as merely "fascinating".   Plaintiff seems to
suggest that if the reasons which would justify the
classification in a particular case are not the ones of
which the legislature can be shown to have been
thinking at the time it made the classification, then

the latter must fall when the reason the legislature did have in mind is insufficient for that case. There is no support for this doctrine. It is enough if a state of facts can be conceived which would form a reasonable basis for the classification. *Naudzius* v. *Lahr,* 253 Mich 216 (74 ALR 1189, 30 NCCA 179); *Miller* v. *Detroit Savings Bank,* 289 Mich 494. These cases and others hold, as well, that the burden rests on the party assailing it to prove the absence of a reasonable basis therefor. What has plaintiff proved in that respect? The most he claims to have shown is that his exposure began after enactment of the remedial statute, and that, as he contends, there is, therefore, no factor or problem of accrued liability in his case to justify the classification and $10,500 limitation.

What are some factual bases, other than that of accrued liability, which defendants say reasonably can be conceived to sustain the classification?

1. Exposure to silicosis and other dust diseases is limited to a relatively narrow segment of industry, consisting largely of mining, quarrying, cutting, grinding and polishing of metal, and foundry work. To this effect, see opinion in *Gauthier,* pp 520–522, quoting from 1 Larson, The Law of Workmen's Compensation, § 41.20, and from the governor's commission of inquiry (House Journal, 1937, pp 158–160 [Michigan]). See, also, September, 1958, issue of Public Health Reports, published by the United States department of health, education and welfare, Vol 73, No 9, pp 839–842, disclosing results of a cost study by the occupational health program of the United States public health service. It shows that for the years 1950 to 1955, two-thirds of the discovered cases of silicosis were associated with mining and quarrying, 16% with foundry work, and 18% with pottery, stone, silica brick, tile, clay and glass industries. Defendants urge that this concentration

on relatively few industries of the insurance cost for care and compensation for persons affected with such diseases might conceivably involve financial risks and burdens so confiscatory as to drive them out of business or out of the State whose laws provide for, but place no limit on, such compensation. This was noted by Larson, in the quotation in *Gauthier,* with respect to the monument industry in Wisconsin, where statutorily imposed full coverage, without limits, caused the insurance premium for monument workers to soar higher than the payroll itself, with the result that the entire industry was closed down.

2. As appears from the above mentioned cost study and published report thereof (see pp 844, 845) average compensation costs, per case, for silicosis, run far higher than in compensation cases generally; and, further, silicosis accounts for a very high percentage (1/3 to 90%) of all occupational diseases. From these factors, the report concludes, with respect to limits in compensation laws in cases of silicosis, that:

"If restrictions in laws were lifted, the costs would undoubtedly skyrocket to unforeseen proportions." (p 845)

3. Workers affected by silicosis are more readily employable in other occupations, where there is no exposure to dust, than is true with workers suffering from other compensable injuries or disabilities.

We think these come within the *Naudzius* characterization of reasonably conceivable facts which would and do sustain the statutory classification and limitation. The statutory imposition of a $10,500 limit on silicosis and dust disease cases, even though not made applicable to other cases of compensable disability, represents a classification which is reasonable. It does not involve a denial of equal protection of the laws. We hold it constitutional as applied to

the facts at bar as we did to those in *Gauthier*. That the legislature intended it to apply in both situations cannot be doubted from the language of the statute.

Defendants also contend that the appeal board erred in granting plaintiff reimbursement from defendants for the use and benefit of the Muskegon County Sanatorium for the cost of his hospitalization there, which plaintiff had not paid and for which he had not been charged. CLS 1956, § 412.4 (Stat Ann 1960 Rev § 17.154), provides:

"The employer shall furnish, or cause to be furnished, to an employee who receives a personal injury arising out of and in the course of his employment, reasonable medical, surgical and hospital services and medicines or other attendance or treatment recognized by the laws of this State as legal, when they are needed  *  *  *  *If the employer shall fail, neglect or refuse so to do such employee shall be reimbursed for the reasonable expense incurred by or on his behalf in providing the same, by an award of the commission."** (Emphasis supplied.)

Defendants quote from section 3a of the so-called tuberculosis statute, CL 1948, § 329.403a (Stat Ann 1956 Rev § 14.363[1]), as follows:

"Expenditures of public funds for the treatment or control of tuberculosis or for the treatment, isolation or control of persons afflicted with tuberculosis, *shall be considered expenditures for the protection of the public health,* and not as moneys advanced in the nature of welfare or relief. *No person shall be under legal obligation to make reimbursement for such expense so incurred,* unless the State commissioner of health and the county of settlement, after reasonable

---

* The powers and duties of the workmen's compensation commission, here referred to, and elsewhere in this opinion, have been transferred to the workmen's compensation department and the workmen's compensation appeal board, and the commission has been abolished. See CLS 1956, §§ 408.2, 408.9 (Stat Ann 1960 Rev §§ 17.6[8], 17.6[15]). —REPORTER.

notice and upon fair hearing under rules of procedure to be determined by the State commissioner of health, shall have found that the person so hospitalized or treated, or the person or persons legally liable for his support, are possessed of sufficient income or estate to enable them to make such reimbursement in whole or in part without materially affecting their reasonable economic security or support, in the light of their respective resources, obligations, and responsibilities to dependents. *No such order shall be made retroactive unless* said State commissioner of health and the county of settlement shall find that the person to be charged has been guilty of misrepresenting or withholding knowledge of facts material to the issue. Receipts under any such order, and moneys voluntarily paid as reimbursement, shall be distributed pro rata to the funds out of which the expenditures were made." (Emphasis supplied.)

Defendants then say that the State commissioner of health has not conducted a hearing or made an order as specified in the last above statutory quotation, and conclude that, therefore, as provided therein, "no person shall be under legal obligation to make reimbursement for such expense so incurred" in the county sanatorium for plaintiff's treatment and care. Hence, say defendants, the above quoted language from the workmen's compensation act that the "employee shall be reimbursed for the reasonable expense incurred by or on his behalf in providing" medical and hospital services "by an award of the commission" has no application here because plaintiff has incurred no expense, has not been charged for such service, is not obligated to make reimbursement, and has paid nothing for it, and so there is nothing for which plaintiff can be reimbursed. They urge that it would be a misnomer to call payment therefor to him, under such circumstances, reimbursement when it would really amount to a windfall. The stat-

ute seems, however, to use the word in no technical sense, because it expressly provides that a plaintiff shall be "reimbursed" not only when the expense is incurred by him, but even when incurred on his behalf.

We think the expense in question, incurred by the sanatorium on plaintiff's behalf, comes within the meaning of the reimbursement provision of the compensation statute. It provides for reimbursement of plaintiff. True, the statute does not make express provision for such reimbursement to plaintiff for the use and benefit of another, such as the sanatorium which incurred the expense on plaintiff's behalf. If, however, the appeal board sees fit to place such strictures on the reimbursement due plaintiff from defendants, we see no reason for complaint on the part of defendants who must pay at all events. It cannot much concern them who receives the benefit as between plaintiff and the sanatorium. Certainly public policy or legislative intent as expressed in either act can hardly be said to be offended if the effect of the award is to cause reimbursement of the institution which provided the care for plaintiff. In fact, it accomplishes directly what the above quoted provision in the so-called tuberculosis statute contemplates by the less direct method of proceedings at the instance of the State commissioner of health. Even if it be conceded that plaintiff is not liable under the tuberculosis statute, the fact is not thereby obviated that the sanatorium incurred the expense on his behalf, for which defendants are bound to make reimbursement, that is payment, under the compensation statute.

Finally, defendants raise the question whether, under this Court's decision in *Wilson* v. *Doehler-Jarvis Division of National Lead Company*, 358 Mich 510, interest should be added to the award, as the appeal board did in this case. On December 16, 1958,

the hearing referee found that plaintiff sustained a compensable personal injury on December 10, 1956, and awarded compensation, subject to the $10,500 limitation, but without interest. Defendant filed application to the appeal board for review. Plaintiff filed cross-application for review as to the $10,500 limit, but neither party raised or requested review of the interest question. On November 10, 1960, the appeal board entered its order affirming the award of compensation but modifying it by eliminating the $10,500 limitation and providing, *sua sponte,* for interest on all past due benefits at 5% per annum from due date till paid. In *Wilson* v. *Doehler-Jarvis* the plaintiff was injured in January of 1951, resulting in his disablement in August of 1952 and his death in February of 1955. In May of 1954 he had filed application for hearing and adjustment of claim. Hearing was commenced in September of 1954. Plaintiff died in February of 1955 and in March application was filed on behalf of his dependents for death benefits. In February of 1956 the hearing referee granted compensation and in October of 1956 the appeal board entered its order granting compensation. This was affirmed by this Court July 15, 1958 (353 Mich 363). It is since the latter date that all of the proceedings in the instant case occurred. Plaintiff's disablement in this case on December 10, 1956, followed by 10 months the hearing referee's award to plaintiff Wilson's dependents and by 2 months the appeal board's affirmance in that case. Query well, should interest allowed Wilson's dependents be denied on this plaintiff's compensation when his disability and award came after the referee's and appeal board's award in *Wilson,* merely because the date when this Court affirmed, with modifications, the circuit judge's allowance of interest in *Wilson* came later (January 4, 1960) than the date of this plaintiff's injury and disablement?

That question projects into the foreground the statement in the opinion of the majority of this Court, in approving interest, in *Wilson* v. *Doehler-Jarvis,* 358 Mich 510, 517, that, "This decision shall not, however, be regarded as retroactive." What was meant by that language?

Plaintiff suggests that the members of this Court signing the opinion containing that language meant thereby simply to insure that the decision should not occasion reopening of cases in which interest had not been allowed and which already had been closed on the date of that opinion. Such construction, at all events, appears to pose no constitutional difficulties.

Defendants insist, however, that the express denial, in *Wilson,* of retroactive effect for the new holding allowing interest, should be read in the light of the language of the majority of the 7 members of this Court participating in the decision in *Parker* v. *Port Huron Hospital,* 361 Mich 1, 26, in which note is taken of the fact that "It has been suggested, in the event this Court were to overrule the immunity exception, that it should do so on a prospective basis" to which, in that same opinion (p 28), the response is made, "we believe the new rule should apply to the instant case and to all future causes of action arising after September 15, 1960, the date of filing of this opinion." That, say defendants, should apply here, as relates to the new *Wilson* holding on interest. That is not the view expressed in the 2-man dissent in *Jochen* v. *County of Saginaw,* 363 Mich 648, written by the writer of the 4-man majority opinion in *Parker.* It interpreted the mentioned language in *Wilson* against retroactivity as above suggested by plaintiff.

Not having joined in the majority opinion in either *Wilson* or *Parker,* and remaining unpersuaded still that it is or was within the judicial province, in

*Wilson,* to amend the compensation statute to make it provide for interest, nevertheless, if the law now be as therein pronounced and I am confronted with the necessity of applying either or both of those majority opinions, then I must conclude that plaintiff's construction of the questioned sentence in *Wilson* should be adopted. When new law comes into being by legislative enactment susceptible of 2 different interpretations, one producing a constitutional result and the other one which would be unconstitutional, it is a rule of statutory construction to adopt that which squares with constitutionality, on the presumption that the legislature intended to do and accomplish that which is constitutional. *Sullivan* v. *Michigan State Board of Dentistry,* 268 Mich 427, and cases cited therein. Ought not law created by this Court to be accorded equal deference and presumption of constitutionality? For this Court to announce in *Wilson,* on January 4, 1960, that the old law as stated in *Fowler* v. *Muskegon County,* 340 Mich 522, which denied that plaintiff the right to interest on workmen's compensation benefits, was then being overruled and that under the new or true law plaintiff Wilson was entitled to such interest, but now, in 1962, without overruling *Wilson* but, in fact, professing that it is still the law, to say to plaintiff McDaniel that his claim for like interest, to which he would be entitled under that present law, is denied because his cause of action for compensation accrued before this Court spoke on the interest question in *Wilson,* is to deny plaintiff McDaniel equal protection of the laws. On January 4, 1960, a majority of this Court declared the law to be that plaintiffs are entitled to interest on workmen's compensation benefits from due date until paid. Until that law is overruled by this Court it cannot, constitutionally, fail to apply it to cases coming before it, absent some intervening statute to the contrary,

unless it confesses the error in that case and recognizes *Fowler* anew.

Accordingly, plaintiff's interpretation of the indicated sentence in the opinion in *Wilson* should be adopted, if for no other reason, to permit the opinion and law therein announced to bear the stamp of constitutionality, at least insofar as "equal protection of the laws" is concerned.

Affirmed in part and reversed in part, as above indicated, and remanded for entry of an order consistent herewith. No costs, neither party having prevailed in full.

ADAMS, J., concurred with DETHMERS, J.

BLACK and KAVANAGH, JJ., concurred in result.

CARR, C. J. (*for modification of award*). For the reasons set forth in the dissenting opinion in *Wilson v. Doehler-Jarvis Division of National Lead Company,* 358 Mich 510, 519, we cannot agree that interest should be allowed in the instant case on the award of compensation in plaintiff's favor. The rights and obligations of the parties in a proceeding of this nature rest wholly on the statute. The legislature has not seen fit to provide in the workmen's compensation law that awards thereunder shall draw interest. The issue of public policy in this respect was and is a matter for legislative determination.

With respect to the other questions involved in the case at bar, we are in accord with the conclusions reached by Justice DETHMERS in his opinion.

KELLY, J., concurred with CARR, C. J.

SOURIS, J. (*concurring in affirmance in part, reversal in part*). I am not persuaded plaintiff has borne his burden of proving the absence of a rea-

sonable basis for the maximum limitation appearing in our workmen's compensation act upon benefits paid for death or disability resulting from industrial silicosis. Nor do I believe that defendants, distinguished from plaintiff, are in any position to complain about the appeal board's order granting plaintiff reimbursement of medical expenses for the use and benefit of the county sanatorium, which incurred those expenses in plaintiff's behalf. Finally, the appeal board's award of interest upon all past due benefits from due date until paid was correct for the reasons I set forth in my opinion in the case of *Drake* v. *Norge Division, Borg-Warner Corporation,* 367 Mich 464.

For the foregoing reasons, I concur in the disposition made of this case by Mr. Justice Dethmers.

Otis M. Smith, J., concurred with Souris, J.