MAGNUSON *v.* KENT COUNTY BOARD OF CANVASSERS.

1. MUNICIPAL CORPORATIONS—HOME-RULE CITIES—ANNEXATION—
STATUTES—AMBIGUITY.
Provisions of section of home-rule statute relative to annexation
of territory by one city from another city, where both have a
population of more than 15,000 *held,* ambiguous (CLS 1956,
§ 117.9).

2. STATUTES—CONSTRUCTION—RESULT—LEGISLATIVE INTENT.
A court which must construe an ambiguous statute may properly
look to the result of the construction to aid it in determining
legislative intent.

3. MUNICIPAL CORPORATIONS—HOME-RULE CITIES—ANNEXATION—
REFERENDUM—CONSTRUCTION OF STATUTES.
Final sentence of ambiguous section of home-rule city statute
providing that "this section shall not be construed so as to
give *any* city authority to proceed hereunder to attach territory
from any other city unless the question relative thereto has been
voted upon by the voters of the entire cities affected" is con-
strued as requiring that the vote of the entire cities affected be
counted separately and by the use of the term *any city* is not
limited to cities of less than 15,000 population as to which
some preceding provisos especially pertained (CLS 1956,
§ 117.9).

4. COSTS—PUBLIC QUESTION—CONSTRUCTION OF STATUTES—HOME-
RULE CITIES—ANNEXATION.
No costs are allowed on appeal involving construction of am-
biguous section of home-rule city statute relative to annexation
of territory of one home-rule city to another, a public question
being involved (CLS 1956, § 117.9).

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 37 Am Jur, Municipal Corporations §§ 23–34, 107.
[2] 50 Am Jur, Statutes § 368 *et seq.*
[3] 37 Am Jur, Municipal Corporations §§ 23–34, 107; 50 Am. Jur,
Statutes §§ 225, 226.
[4] 19 Am Jur, Costs § 91.

Appeal from Kent; Searl (Fred N.), J. Submitted February 7, 1963. (Calendar No. 55, Docket No. 49,931.) Decided July 17, 1963.

Certiorari by Jack A. Magnuson and Everett Windemuller, registered electors residing in the city of Wyoming, against the Kent County Board of Canvassers challenging its cumulative tabulation of votes in an annexation election. The City of Wyoming, a municipal corporation, intervened as party plaintiff, and Charles J. Huizenga, a registered elector, the City of Grand Rapids, a municipal corporation, and the Board of Education of the City of Grand Rapids intervened as parties defendant. Writ dismissed. Plaintiffs and intervening plaintiff appeal. Reversed and remanded for entry of order directing board of canvassers to certify election results based upon separate count of votes in each political subdivision and area affected.

*George R. Sidwell*, for plaintiffs.

*Schmidt, Smith, Howlett & Halliday (William J. Halliday, Jr.*, of counsel), for intervening plaintiff City of Wyoming.

*Vanderveen, Freihofer & Cook (George R. Cook*, of counsel), for defendant.

*Dilley & Dilley (Albert R. Dilley*, of counsel), for intervening defendant Huizenga.

*James K. Miller*, for intervening defendant City of Grand Rapids.

*Roger D. Anderson*, for intervening defendant Board of Education of the City of Grand Rapids.

O'HARA, J.  This is an annexation case.  It arises under section 9 of the home-rule act.[1]  A recent per curiam opinion[2] described the statute as "abstruse." This descriptive euphemism may well qualify as the understatement of the judicial year.  The involved section when first enacted contained 22 printed lines. It set out clearly which electors would vote in the annexation proceedings, authorized and specified when the vote would be counted collectively and when separately.  Since the enactment in 1909, the section has acquired 2 "provided howevers" and 3 "provided furthers."  It has been rewritten changing the relative positions of the provisos which now are considerably larger than the original section itself.  The problem posed by the appeal is to determine the legislative intent of the section in its present entirety.

The essential facts are accurately stated in appellants' brief.  We herewith set them out:

"The city of Grand Rapids and the city of Wyoming are 'home-rule cities' governed by PA 1909, No 279, including matters pertaining to the annexation of territory thereto and the detachment of territory therefrom.  According to the 1960 U.S. census, the population of Grand Rapids is 197,193 inhabitants, and that of Wyoming is 45,829 inhabitants. Therefore, at the time of the happening of all events pertinent to this case, the populations of both cities exceeded 15,000 inhabitants.

"On the second day of April, 1962, an election was held in each of the 2 cities on the question of annexing certain described territory (commonly called the airport property) of the city of Wyoming to the city of Grand Rapids.  The vote on the question, according to the cities concerned was:

---

[1] PA 1909, No 279, § 9, as amended (CLS 1956, § 117.9 [Stat Ann 1961 Cum Supp § 5.2088]).

[2] *Cavanagh* v. *Calhoun County Board of Canvassers,* 361 Mich 516.

|                                            | YES    | NO     |
|--------------------------------------------|--------|--------|
| "City of Grand Rapids .........            | 36,916 | 4,042  |
| City of Wyoming (outside area to be annexed) ............. | 754 | 13,977 |
| City of Wyoming area to be annexed ................. | 36 | 8 |
| City of Wyoming-balance of city            | 754    | 13,977 |

"The Kent county board of canvassers canvassed the votes cast at such election and by certificate, dated April 18, 1962, declared the annexation question to have been adopted. In arriving at such determination, the votes cast in the city of Grand Rapids and in that part of the city of Wyoming outside the territory proposed to be annexed to the city of Grand Rapids were added together so as to give a total in favor of such annexation."

The able trial court clearly framed the issue in his carefully considered opinion. We quote:

"The board of canvassers, following the advice of the county's civil counsel, counted the vote in 2 units, (1) that of the area to be annexed, (2) the combined vote of the city of Grand Rapids and the vote in the city of Wyoming, exclusive of the area to be annexed. So counted, the proposal was declared carried. This proceeding is certiorari to review the action of the board of canvassers.

"Plaintiffs assert that this being a proposal to annex to 1 city a portion of another city, it must, in order to carry, receive the affirmative vote of 3 units, (1) the area to be annexed voting separately, (2) the entire * * * city of Wyoming from which the territory is to be detached voting separately and (3) the entire * * * city of Grand Rapids to which it is to be attached voting separately. In making this contention, plaintiffs rely upon the last sentence of section 9 [CLS 1956, § 117.9 (Stat Ann 1961 Cum Supp § 5.2088)] which reads: .

" 'This section shall not be construed so as to give any city the authority to proceed hereunder to attach territory from any other city unless the question

relative thereto has been voted upon by the voters of the entire cities affected, except * * *.' (The exception has no application here.)

"And plaintiffs rely upon the opinion of the Supreme Court in *Cavanagh* v. *Calhoun County Canvassers,* 361 Mich 516, and the opinion of the attorney general quoted therein.

"Defendants assert that the action of the board of canvassers was correct and rely upon other provisions of section 9 which will be quoted.

"Counsel for the respective parties each find support for their position in the same rules of statutory construction. I shall not repeat them. They are well known to the profession. They have been used by the courts when called upon to construe an ambiguous statute to aid them in determining the legislative intent. The first question here is: Is there an ambiguity in this statute?

"Section 9 of the home-rule act, adopted originally in 1909, has been amended 6 [8[3]] times. As originally adopted, it read:

" 'The district to be affected by every such proposed incorporation, consolidation or change of boundaries shall be deemed to include the whole of each city, village or township from which territory is to be taken or to which territory is to be annexed: *Provided,* That proposed consolidations or changes of boundaries shall be submitted to the qualified electors of the city, and to the qualified electors of the city, village or township from which the territory to be taken is located, and at the election when said question is voted upon, the city, village, or township shall conduct the election in such manner as to keep the votes of the qualified electors in the territory proposed to be annexed or detached in a separate box from the one containing the votes from the remaining portions of such city, village or township, and if the returns of said election shall show a

---

[3] PA 1917, No 225; PA 1925, No 337; PA 1931, No 314; PA 1935, No 48; PA 1947, Nos 36 and 334; PA 1951, No 58; and PA 1956, No. 68.

majority of the votes cast in the district proposed to be annexed, voting separately, to be in favor of the proposed change of boundary, and if a majority of the electors voting in the remainder of the district to be affected as herein defined, voting collectively, are in favor of the proposed change of boundary, then such territory shall become a part of the corporate territory of the city or shall be detached therefrom, as the case may be.'

"The original provisions of section 9 defining 'the section has been amended and is a part of the section as it reads today.

"The language now embodied in the sentence relied upon by plaintiffs and above-quoted was placed in the statute in 1925. The amendment of that year repeated the provisions of the act as originally adopted (and as amended in 1917) and added to it[4] the following:

" 'Provided, however, That territory may be attached or detached to or from cities having a population of fifteen thousand or less, if a majority of the electors voting on the question in the city to or from which territory is to be attached or detached, and a majority of the electors from that portion of the territory to be attached or detached as the case may be, both vote in favor of such proposition: And it is further provided, That this section shall not be so construed so as to give any city the authority to proceed hereunder to attach territory from any other city unless the question relative thereto has been voted upon by the voters of the entire cities affected.'

"In succeeding amendments and, particularly, in that of 1947,[5] the provisions added to the act in 1925 have become separated, the first part beginning with the words 'Provided, however' and ending with the words 'in favor of such proposition:' is moved ahead of some language it formerly followed and the last

<hr />

4 See PA 1917, No 225, and PA 1925, No 337.—Reporter.
5 See PA 1947, No 36, and the subsequent PA 1947, No 334.—Reporter.

part is moved to the end of the section and made into a separate sentence which reads as previously quoted.

"The original.provisions of section 9 defining 'the district to be affected' by the proposed change of boundaries and providing for a vote in which the votes of the qualified electors in the territory proposed to be annexed are kept in a separate box from that containing the votes from the remaining portions of the area to be affected and further providing:

" 'If the returns of said election shall show a majority of the votes cast in the district to be annexed, voting separately, to be in favor of the proposed change of boundary, and if a majority of the electors voting in the remainder of the district to be affected as herein defined, voting collectively, are in favor of the proposed change of boundary, then such territory shall become a part of the corporate territory of the city or shall be detached therefrom, as the case may be,' although separated by other language, are retained in the 1947 amendment and in 2 subsequent amendments, 1 in 1951 and 1 in 1956 (neither of which latter amendments changed any language here involved).[6]

"Are these provisions of the act as to the manner in which the votes are to be counted in effect repealed insofar as they apply to annexations from 1 city to another, by the sentence reading:

" 'This section shall not be construed so as to give any city the authority to proceed hereunder to attach territory from any other city unless the question relative thereto has been voted upon by the voters of the entire cities affected'?

"The board of canvassers says that this last quoted sentence provides only who can vote not how the votes are to be counted and that in order to hold that the last sentence, in effect, repeals the earlier provisions in the section as to how the vote is to be

---

[6] PA 1951, No 58, and PA 1956, No 68.—Reporter.

counted, we must read this last sentence as if it had been written something like this:

" 'This section shall not be construed so as to give any city the authority to proceed hereunder to attach territory from any other city unless the question relative thereto has been voted upon by the voters of the entire cities affected *and the returns of the election shall show that a majority of the votes cast in each of said cities voting separately were in favor of the proposed change of boundary.*' (Emphasis of the trial court.)

"Plaintiffs contend that the last sentence of section 9 is to be construed as if it so read and say that the Supreme Court so held in the *Cavanagh Case.*"

From this point the trial court's opinion continues with an analysis of *Cavanagh;* its restriction to the specific case under consideration and a similar analysis of the opinion of the attorney general. Finally, the court below concludes:

"I am unable to be persuaded * * * the Supreme Court intended to decide more than the question before it."

We agree. The issue, therefore, now becomes whether the rationale in *Cavanagh* based as it was on the attorney general's opinion that "the intent of the legislature is clear that each city must vote separately on the question [of annexation]; otherwise the phrase 'entire cities' " would be meaningless, obtains here.

We believe the cited excerpt is equally applicable to the case at bar. We recognize Judge Searl's very able negation of the court's right to decide between the 2 "philosophies of annexation." Basically, he postulates that it is no business of the judicial branch to construe a statute in such manner as to achieve what the court might consider a more desirable result or a more equitable mode of procedure. In sup-

port of his premise and the logical conclusion there-from, he quotes this Court from *Goethal* v. *Kent County Supervisors,* 361 Mich 104, at p 115:

"The statement that matters relating to incorporation and annexation are legislative in character necessarily excludes authority on the part of the courts to interfere in such a proceeding on the ground that the purpose to be achieved by following the legislative procedure is unreasonable because inconsistent with the rights of property owners, or of political subdivisions or municipalities."

We do not deviate from this stated principle in deciding as we do. The conclusion we reach, we believe, stems from the difference in the premises of the trial court and our Court on review. Judge Searl reasons to the conclusion that "there is no ambiguity here." Having accepted this premise, he rightly desists from applying any test of "result morality" to the conclusion and effect of his construction of the statute. Contrariwise we find the involved section not only ambiguous *per se,* but unclear in the relationship of the proviso designating who may vote to the method of counting the votes. Assuming we are correct that the statute is, as has been previously held "abstruse," we are freed from the limitation in construction Judge Searl imposed upon himself. We may in the construction of an ambiguous statute look to the result of the construction to aid us in determining legislative intent. In fact, the converse of the proposition becomes true and we are *obligated* to look to the result in order to determine *what* result our coequal branch intended. We regard the placement of the controlling language at the end of the statute and the use of the word *section* as important. We hold that when the legislature stated:

"This section shall not be construed so as to give any city the authority to proceed hereunder to at-

tach territory from any other city unless the question relative thereto has been voted upon by the voters of the entire cities affected,"

that it mandated us to construe the whole section (not just the 15,000 population proviso) in such manner so as not to give any city the authority to attach territory from *any* other city without the vote of the entire cities affected counted separately. From here the next step to the applicability of the interpretation of the attorney general in *Cavanagh* to the instant case is obvious.

In further support of our conclusion we mention as significant what we believe must be recognized as a clearly intentional omission by the legislature. Had the legislature intended that the separate vote of the entire cities be limited to the proviso dealing only with cities of less than 15,000, the simple insertion of the word "such" between the words "any" and "city" would have accomplished the purpose.

Also meaningful, we believe, is the use in the final clause of the phrase "and it is further provided" in the portion added by PA 1925, No 337. This is the only place in the section where the legislature departs from the use of "provided however" and the more simple "provided further." The time of the addition of the words "and it is further provided" in the senate,[7] after the bill was approved in the house, indicates to us that the addition of the last proviso was to effect a clarification of the relationship of *any* city to *any other* city irrespective of population. Here, after all, is the heart of the case. Does *any* city mean *any city* or does it mean *any* city of 15,000 or less? We are constrained to hold that *any city* means *any city*. Thus, we apply the reasoning of

[7] See 1925 Senate Journal, pp 935, 936.—Reporter.

*Cavanagh* and the opinion of the attorney general to the instant case.

The order of the trial court dismissing the writ of certiorari is reversed. The case is remanded with instructions to enter an order directing the Kent county board of canvassers to certify the result of the April 2, 1962 election on the basis of the vote (1) in the territory to be annexed; (2) in the city of Grand Rapids counted separately; and (3) in the city of Wyoming counted separately.

No costs, a public question being involved.

CARR, C. J., and DETHMERS, KELLY, BLACK, KAVANAGH, SOURIS, and SMITH, JJ., concurred.