*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DOCK FARISH, KEBEH GIBSON, and MILLIE NICHOLS, on Behalf of Themselves and All Others Similarly Situated,

Plaintiffs-Appellants,

v

DEPARTMENT OF TALENT AND ECONOMIC DEVELOPMENT, TALENT INVESTMENT AGENCY, UNEMPLOYMENT INSURANCE AGENCY, DIRECTOR OF DEPARTMENT OF TALENT AND ECONOMIC DEVELOPMENT, DIRECTOR OF TALENT INVESTMENT AGENCY, and ACTING DIRECTOR OF UNEMPLOYMENT INSURANCE AGENCY,

Defendants-Appellees.

FOR PUBLICATION
March 18, 2021

No. 350866
Court of Claims
LC No. 17-000035-MZ

Before: RIORDAN, P.J., and SHAPIRO and RONAYNE KRAUSE, JJ.

RIORDAN, J. (*concurring in part and dissenting in part*).

I would affirm the trial court's ruling that plaintiffs failed to state a claim under 42 USC 503(g).

## I. 42 USC 503(g)(1)

The United States Department of Labor's interpretation of 42 USC 503(g)(1), as stated in Unemployment Insurance Program Letter (UIPL) No. 45-89, conflicts with the plain language of the statute, and therefore, it is not entitled to deference under *Chevron USA Inc v Natural*

*Resources Defense Council, Inc*, 467 US 837, 843; 104 S Ct 2778; 81 L Ed 2d 694 (1984),[1] or *Skidmore v Swift & Co*, 323 US 134, 139-140; 65 S Ct 161; 89 L Ed 124 (1944) (explaining when an administrative policy is entitled to deference; a court applying *Skidmore* deference determines the best available construction of the statute by considering the agency's own analysis as persuasive and giving that analysis whatever weight it reasonably deserves).

When interpreting a federal statute, our goal is to give effect to the intent of Congress. *Walters v Nadell*, 481 Mich 377, 381; 751 NW2d 431 (2008). "[T]he most reliable evidence of that intent is the plain language of the statute." *Hegadorn v Dept of Human Services Dir*, 503 Mich 231, 245; 931 NW2d 571 (2019). Statutory language should be construed reasonably, keeping in mind the purpose of the act. *McCahan v Brennan*, 492 Mich 730, 739; 822 NW2d 747 (2012). When interpreting words and phrases used in a statute, those words and phrases used must be assigned such meanings as are in harmony with the whole of the statute, construed in the light of history and common sense. *Sweatt v Dep't of Corrections*, 468 Mich 172, 179; 661 NW2d 201 (2003). Thus, we do not construe the meaning of statutory terms in a vacuum; rather, we interpret the words in their context and with a view to their place in the overall statutory scheme. *Manuel v Gill*, 481 Mich 637, 650; 753 NW2d 48 (2008).

The unemployment insurance system is a joint federal-state scheme whereby the federal government subsidizes state unemployment insurance programs. *California Dep't of Human Resources Dev v Java*, 402 US 121, 125; 91 S Ct 1347; 28 L Ed 2d 666 (1971). In order to receive funding, a state unemployment fund should only be used to pay unemployment benefits and certain other items such as cash benefits and refunds for amounts erroneously paid into the fund by employers. 42 USC 503(a)(5). Moreover, states are expressly permitted to deduct certain amounts from unemployment benefits, including payments for health insurance, taxes, and "overpayments as provided in subsection (g)." 42 USC 503(a)(5). Subsection (g) provides that "[a] State shall deduct from unemployment benefits otherwise payable to an individual an amount equal to any overpayment made to such individual under an unemployment benefit program of the United States or of any other State, and not previously recovered." 42 USC 503(g)(1). As the trial court correctly concluded, this provision contains no limitation barring states from deducting penalties and interest. Thus, I would decline to read into the statute a limitation that Congress has not included. See *Haynes v Neshewat*, 477 Mich 29, 38; 729 NW2d 488 (2007) (holding that courts should "not read into [a] statute a limitation that is not there").

Moreover, 42 USC 503(m) indicates that states must act to recover any uncollected "covered unemployment debt" as defined by 26 USC 6402(f)(4), which includes:

> (A) a past-due debt for erroneous payment of unemployment compensation due to fraud or the person's failure to report earnings which has become final under the

---

[1] "Under *Chevron*, the federal courts will defer to an administrative agency's interpretation of a statute that it is charged with administering—even if that interpretation differs from what the courts believe to be the best interpretation—so long as the particular statute is ambiguous on the point at issue and the agency's construction is reasonable." *Michigan Farm Bureau v Dep't of Envt'l Quality*, 292 Mich App 106, 130 n 10; 807 NW2d 866 (2011) (citations omitted).

law of a State certified by the Secretary of Labor pursuant to section 3304 and which remains uncollected;

(B) contributions due to the unemployment fund of a State for which the State has determined the person to be liable and which remain uncollected; and

(C) any penalties and interest assessed on such debt.

Subsection (C) permits penalties and interest to be assessed on the "such debt" as described in subsection (A) (benefits obtained through fraud or misrepresentation) and subsection (B) (otherwise liable). Accordingly, Congress expressed its intent for states to seek recovery of any penalties and interest associated with outstanding debts incurred by fraud or otherwise.[2]

Rather than rely on the general directive in 42 USC 503(a)(5) that unemployment funds be used only to pay benefits, as the majority does, I would find that the more reasonable view is that the specific provisions of 42 USC 503(m) and 26 USC 6402(f)(4) indicate that the statutory scheme as a whole allows that the states may deduct penalties and interest prior to the disbursement of unemployment payments, even in cases where fraud is not alleged. *Manuel*, 481 Mich at 650 (we interpret the words in their context and with a view to their place in the overall statutory scheme); *Donkers v Kovach*, 277 Mich App 366, 370–371; 745 NW2d 154 (2007) (where two statutes relate to the same subject matter and share a common purpose, they are *in pari materia* and must be read together as one law; where two statutes are *in pari materia* but conflict on a particular issue, the more specific statute controls over the more general). This is because 26 USC 6402(f)(4) of the tax code permits recovery of unemployment benefits erroneously paid in cases of fraud, or for which a person has been deemed liable irrespective of fraud, and any penalties and interest associated with that debt, by offsetting any tax credit or refund owed to the filer. Further, 42 USC 503(m) of the Social Security Act requires that states utilize that tax‑ refund-interception method of collection for debts that are outstanding one year after they are assessed, and the Federal Unemployment Tax Act (FUTA) permits those funds to be deposited into the state's funds in the same manner that would have occurred if the individual had made the payment themselves— including penalties and interest. 26 USC 3304(a)(4)(G).

In addition to this tax‑ refund‑ garnishment method of collection, states are permitted to deduct "overpayments" from unemployment benefits. "Overpayment" is not defined, but it is more reasonable to conclude that Congress intended for states to have two methods of collecting

---

[2] However, the parties have failed to raise this argument, and they agree in their joint supplemental briefs that 42 USC 503(m), and the reference therein to 26 USC 6402(f)(4)(C), does not apply here. But, the parties may not dictate by agreement the proper interpretation and application of the law. *Mack v City of Detroit*, 467 Mich 186, 209; 649 NW2d 47 (2002) (the appellate court must "set forth the law as clearly as it can, irrespective whether the parties assist the Court in fulfilling its constitutional function. The jurisprudence of Michigan cannot be, and is not, dependent upon whether individual parties accurately identify and elucidate controlling legal questions.").

erroneously paid benefits and associated penalties and interest. The alternative requires us to conclude that in cases in which a recipient commits fraud to obtain unemployment benefits, for example, Congress intended for states to deduct the amount of erroneously paid benefits from unemployment benefit checks, but require states to wait one year and then collect the associated penalties and interest separately by intercepting tax refunds. In other words, a state's ability to collect penalties and interest from a recipient who commits fraud to obtain unemployment benefits largely would be dependent upon whether that individual files a tax return, and if so, the size of the tax refund.[3]

The majority concludes otherwise. Instead, it holds that deducting penalties and interest violates the general provision in 42 USC 503(a)(5) that unemployment funds must be used to pay benefits, and that the enumerated exceptions to this general rule should be strictly construed. I struggle to follow such reasoning. Reducing unemployment benefits by the amount of penalties and interest is not, in any respect, inconsistent with the general rule of 42 USC 503(a)(5) that "[e]xpenditure of all money withdrawn from an unemployment fund of [a] State" must be "in the payment of unemployment compensation." Such language means that money in an unemployment fund may only be used for payment of unemployment benefits and may not, for instance, be used to pay for road repairs. The majority does not explain why the state's conduct in *reducing* unemployment benefits paid to plaintiffs by the amount of penalties and interest—which logically results in money being *retained in* the unemployment fund—constitutes "money withdrawn from an unemployment fund of [a] State." 42 USC 503(a)(5).

Regardless, we should not overlook "the general rule that exemptions in a statute are carefully scrutinized and not extended beyond their plain meaning." *Grand Rapids Motor Coach Co v Michigan Pub Serv Comm*, 323 Mich 624, 634; 36 NW2d 299 (1949). However, this general rule does not apply in this case, where the relevant provision states:

> Expenditure of all money withdrawn from an unemployment fund of such State, in the payment of unemployment compensation, . . . *Provided further*, That amounts may be deducted from unemployment benefits and used to repay overpayments as provided in subsection (g)[.] [42 USC 503(a)(5) (italics in original).]

Our Supreme Court has interpreted the term "provided further" to be clarifying language, rather than indicative of an exception to a general directive. See *Magnuson v Kent Co Bd of Canvassers*, 370 Mich 649, 658; 122 NW2d 808 (1963). Moreover, while the general rule requires courts to

---

[3] We must construe statutes reasonably and in a manner that avoids absurd results. *Zoo Yang v Everest Nat'l Ins Co*, 329 Mich App 461, 471; 942 NW2d 653 (2019). The majority suggests that there is a legitimate basis for such a peculiar scheme because unemployment compensation benefits provide immediate assistance. However, the majority apparently fails to understand that the value of money depreciates over time. Therefore, when a recipient of unemployment benefits receives excess benefits, they deprive the state of the present use of that money. Additionally, in cases of fraud, Congress specifically requires an immediate assessment of penalties when the recipient is determined to have committed fraud. See 42 USC 503(a)(11). Thus, as with the issue before us, any delay in collecting such penalties is unwarranted.

strictly construe exemptions so that they are not extended beyond their ordinary meaning, it does not require us to constrain the ordinary meaning in a manner that is contrary to Congress's intent. *Ally Fin Inc v State Treasurer*, 502 Mich 484, 492; 918 NW2d 662 (2018) (the requirement than an exemption be strictly construed does not permit a strained construction that is contrary to legislative intent). Rather, we are "duty-bound to apply the laws as written." *DeWitt Tp Supervisor v State Tax Comm*, 397 Mich 576, 585; 244 NW2d 920 (1976). Thus, even if this general rule applied in this case, the majority has not applied it correctly.

In addition, the majority concludes that penalties and interest may not be deducted because the statutory scheme requires states to assess penalties and interest in cases of fraud, 42 USC 503(a)(11), but does not specifically allow for a deduction in that regard. However, it does not follow that states are prohibited from deducting penalties and interest merely because there is no specific statutory allowance for the deduction. 42 USC 503 requires deductions in two instances[4] and allows deductions in four additional instances.[5] All four of the allowed deductions relate to instances in which money is withdrawn from the unemployment fund for purposes other than the payment of unemployment compensation, contrary to the general rule of 42 USC 503(a)(5). For example, an allowed deduction for the withholding of federal income tax obviously does not result in the unemployment fund retaining a windfall in that amount. Instead, the amount is remitted to the federal government. See 42 USC 503(a)(5). Yet, remitting money from the unemployment fund to the federal government for the purpose of remitting taxes is incompatible with the general rule of 42 USC 503(a)(5). Hence, a specific statutory allowance for the deduction for payments from the unemployment fund was necessary.

But a deduction for penalties and interest is unlike all other expressly allowed deductions in that such a deduction does not result in withdrawal of money from the unemployment fund for a generally impermissible purpose under 42 USC 503(a)(5). See, e.g., 42 USC 503(11) (providing that penalties must be immediately deposited into the unemployment fund). In my view, Congress was not required to expressly allow a deduction for penalties and interest because such a deduction is inherent within the unemployment statutory scheme itself. That is, the more reasonable interpretation of the statutory scheme is that Congress left this matter to the discretion of the states—an interpretation which we have determined to be reasonable. *Farish v Dept of Talent & Econ Dev*, unpublished opinion of the Court of Appeals, issued December 11, 2018 (Docket No. 341350). Instead, the majority reads into the statute a restriction that is absent from the plain language and violates the principle that we may not "judicially legislate by adding into a statute provisions that [Congress] did not include." *Pike v N Michigan Univ*, 327 Mich App 683, 697; 935 NW2d 86 (2019).

---

[4] States are required to deduct for "child support obligations," 42 USC 503(e), and for "overpayment" of employment benefits, 42 USC 503(g).

[5] States are allowed to deduct "to pay for health insurance, or the withholding of Federal, State, or local individual income tax," 42 USC 503(a)(5), "for the payment of short-time compensation under a short-time compensation program," *id.*, "for the payment of allowances under a self-employment assistance program," *id.*, or for "an uncollected overissuance . . . of supplemental nutrition assistance program benefits," 42 USC 503(d).

We remanded this case to the trial court for the sole task of considering whether the UIPL was entitled to any amount of deference. To that point, the UIPL does not describe any ambiguity in the statute and fails to provide any persuasive authority for its interpretation. Therefore, it is not persuasive under *Skidmore*, 323 US 134. See *Dep't of Labor & Economic Growth, Unemployment Ins Agency v Dykstra*, 283 Mich App 212, 225, 229-230, 231 n 8; 771 NW2d 423 (2009) (applying the *Chevron* framework to reject a guidance letter that contradicted the statute at issue and concluded that the guidance letter did not warrant a lesser level of deference under *Skidmore*). Moreover, the UIPL conflicts with the plain language of the statute and imposes a restriction on states that Congress did not include. *TRJ & E Properties, LLC v City of Lansing*, 323 Mich App 664, 675; 919 NW2d 795 (2018) (agency interpretations of statutes are not entitled to deference or respectful consideration when they conflict with the language of a statute). Until today, it does not appear that any federal court or state appellate court has embraced the UIPL in the manner the majority advocates since it was issued in 1989.[6] And the majority does so here in a peculiar manner—simultaneously concluding that 42 USC 503 is unambiguous and also that the UIPL is entitled to *Skidmore* deference which, by the terms of its holding, only applies to ambiguous statutes. See *John Hancock Mut Life Ins Co v Harris Trust & Sav Bank*, 510 US 86, 109; 114 S Ct 517; 126 L Ed 2d 524 (1993).

In sum, the trial court's deference analysis was proper and I see no reason for reversal.

## II. CONCLUSION

The trial court properly concluded that plaintiffs failed to state a claim under 42 USC 503. Accordingly, I would affirm the trial court's ruling.

/s/ Michael J. Riordan

---

[6] The United States Court of Appeals for the Fifth Circuit cited the UIPL in a case involving the Employee Retirement Income Security Act of 1974 for the proposition that state law must prohibit waiver of claims to unemployment compensation if participating in the federal-state unemployment compensation system. See *Mitchell Energy & Dev Corp v Fain*, 311 F3d 685, 688 (CA 5, 2002). I have not identified any other case that has even cited the UIPL.