GAUTHIER *v.* CAMPBELL, WYANT & CANNON
FOUNDRY COMPANY.

1. CONSTITUTIONAL LAW—EQUAL PROTECTION.

The equal protection clause of the State Constitution affords the
same rights as the equal protection clause of the Constitution
of the United States (US Const, am 14, § 1; Mich Const
1908, art 2, § 1).

2. SAME—EQUAL PROTECTION—POLICE LAWS—CLASSIFICATION.

The equal protection clause admits of the exercise of a wide
scope of discretion in the classification of police laws, and
avoids what is done only when it is without any reasonable
basis and, therefore, purely arbitrary (US Const, am 14, § 1;
Mich Const 1908, art 2, § 1).

3. SAME—EQUAL PROTECTION—MATHEMATICAL NICETY OF CLASSIFI-
CATION.

A classification in police laws having some reasonable basis does
not offend the equal protection clause merely because it is not
made with mathematical nicety, or because in practice it re-
sults in some inequality (US Const, am 14, § 1; Mich Const
1908, art 2, § 1).

---

REFERENCES FOR POINTS IN HEADNOTES

[1]  12 Am Jur, Constitutional Law § 469.
[2, 3]  11 Am Jur, Constitutional Law § 263.
[4, 5]  12 Am Jur, Constitutional Law § 521.
[6]  14 Am Jur, Courts § 203.
[7]  11 Am Jur, Constitutional Law § 134.
[8]  58 Am Jur, Workmen's Compensation § 15.
[9]  50 Am Jur, Statutes § 538.
[10]  58 Am Jur, Workmen's Compensation § 26.
[11, 12]  58 Am Jur, Workmen's Compensation § 73.
Time to be considered in determining whether a case is within
the earlier or later provisions of the workmen's compensation
act, as regards compensation recoverable.  82 ALR 1244.
[13]  58 Am Jur, Workmen's Compensation § 27.
[14]  58 Am Jur, Workmen's Compensation § 543.
Construction of provisions of workmen's compensation acts in
relation to costs or expenses on appeal or review.  79 ALR 678.

4. SAME—PRESUMPTION.

Any state of facts that can reasonably be conceived will be assumed in order to sustain a classification in police laws under the equal protection clause (US Const, am 14, § 1; Mich Const 1908, art 2, § 1).

5. SAME—CLASSIFICATION—BURDEN OF PROOF.

One who assails the classification in a police law has the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary.

6. SAME—COURTS—LEGISLATURE.

The power vested in the judiciary to declare unconstitutional a statute duly passed by the legislative branches is one to be exercised only when the violation is clear.

7. SAME—REPEAL OF A STATUTE—PUBLIC POLICY.

A law's unwisdom which may occasion its repeal does not establish its unconstitutionality.

8. WORKMEN'S COMPENSATION—SILICOSIS—DEATH—CLASSIFICATION.

Monthly gradations and overall maximum limitations on benefits designed to lessen the economic impact on industry of accumulated exposure to conditions resulting in disease of silicosis constitute a proper classification, not obsolete, but applicable to limit amount payable under workmen's compensation act for death from silicosis at a lesser amount than payable under such act for death from other causes (US Const, am 14, § 1; Mich Const 1908, art 2, § 1; CLS 1956, § 417.4).

9. STATUTES—IMPLIED REPEAL.

Repeal by implication requires a clear showing of legislative intent to repeal.

10. WORKMEN'S COMPENSATION—SILICOSIS—DISABILITY—DEATH.

Limitation upon amount payable under workmen's compensation act for disability or death from silicosis to an amount less than sum payable for disability or death from other causes *held,* not to have been wittingly or unwittingly abrogated in view of other mandatory language retained applicable to the silicosis limitation (CLS 1956, § 417.4).

11. SAME—SILICOSIS—MAXIMUM—DATE OF DISABLEMENT.

The maximum workmen's compensation for a dependent of a silicosis victim is fixed by the terms of the act in force at the date of disablement, not the date of death (CL 1948, §§ 417.2, 417.4).

12. SAME—DEPENDENTS—DATE OF INJURY OR DISABLEMENT.

A dependent's right to benefits under the workmen's compensation act is to be determined as of the date of injury, or date of disablement in the case of occupational disease, irrespective of any subsequent change of conditions (CL 1948, §§ 412.7, 412.12).

13. SAME—CONSTRUCTION OF STATUTES.

The Supreme Court construes the workmen's compensation act in accordance with the legislative intent and stated remedial purposes of the act.

14. COSTS — PUBLIC QUESTIONS — WORKMEN'S COMPENSATION — DEPENDENTS—SILICOSIS—DEATH.

No costs are allowed on appeal in proceeding to recover workmen's compensation by dependent of employee who had died from silicosis, where public questions were involved.

Appeal from Workmen's Compensation Appeal Board. Submitted January 7, 1960. (Docket No. 33, Calendar No. 48,302.) Decided July 11, 1960.

Mary Lou Gauthier, dependent daughter of Napoleon Gauthier, deceased, filed her claim for additional compensation from Campbell, Wyant & Cannon Foundry Company, employer, and Michigan Mutual Liability Company, insurer, upon death of her father as a result of silicosis, asserting unconstitutionality of statutory maximum. Claim denied. Plaintiff appeals. Affirmed.

*Marcus, Kelman, Loria, McCroskey & Finucan* (*Benjamin Marcus*, of counsel), for plaintiff.

*Elijah G. Poxson, Jr.*, and *James L. Schueler* (*Charles H. King*, of counsel), for defendants.

EDWARDS, J. This appeal seeks to have this Court declare unconstitutional the statutory maximum limitation now placed upon workmen's compensation for industrial silicosis victims.

The facts are brief and bitter.

Napoleon Gauthier worked for Campbell, Wyant & Cannon Foundry for 23 years, exposed to foundry silica dust. In December of 1947 he became disabled as a result of the industrial disease known as silicosis. Payments of workmen's compensation were made voluntarily by Campbell, Wyant & Cannon under the terms of the Michigan workmen's compensation act* until the maximum amount of $6,000 then provided by the act had been paid.

Napoleon Gauthier died as a result of silicosis January 12, 1958. At that time, his dependent daughter Mary Lou was 16. Her application for benefits under the workmen's compensation act was denied by the referee and appeal board because of the statutory maximum, except for $500 of funeral expenses. She appeals.

This case represents a tragic instance of failure of the Michigan workmen's compensation act adequately to protect a victim of a death occasioned in the industrial process. And appellant's counsel briefs this appeal much as if it lay within the function of this Court freely to amend the statute to fill in the gaps.

The constitutional provisions relied upon by appellant are:

"No State shall  *  *  *  deny to any person within its jurisdiction the equal protection of the laws." US Const, am 14, § 1.

"Government is instituted for their equal benefit, security and protection." Mich Const (1908), art 2, § 1.

"No person shall  *  *  *  be deprived of life, liberty or property without due process of law." Mich Const (1908), art 2, § 16.

---

* CL 1948, § 411.1 et seq., as amended (Stat Ann 1950 Rev and Stat Ann 1959 Cum Supp § 17.141 et seq.).

No due process question is briefed, and the inequality complained of is that the maximum set for victims of death or disability due to silicosis is a different and lower maximum than that set for death or disability resulting from other compensable injuries or diseases. Hence, appellant argues that she is the victim of an arbitrary and unreasonable classification.

Michigan has previously held that article 2, § 1, of its Constitution affords the same rights as the equal protection clause of the Fourteenth Amendment to the United States Constitution. *Naudzius* v. *Lahr*, 253 Mich 216 (74 ALR 1189, 30 NCCA 179); *Cook Coffee Co.* v. *Village of Flushing*, 267 Mich 131.

In this first case, the Court summarized the accepted standards by which statutory classifications are to be tested (pp 222, 223):

"The standards of classification are:

" '1. The equal protection clause of the Fourteenth Amendment does not take from the State the power to classify in the adoption of police laws, but admits of the exercise of a wide scope of discretion in that regard, and avoids what is done only when it is without any reasonable basis and therefore is purely arbitrary. 2. A classification having some reasonable basis does not offend against that clause merely because it is not made with mathematical nicety or because in practice it results in some inequality. 3. When the classification in such a law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed. 4. One who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary.' *Lindsley* v. *Natural Carbonic Gas Co.*, 220 US 61, 78 (31 S Ct 337, 55 L ed 369, Ann Cas 1912C, 160)."

However well these words may read, each "standard" in the end depends for its application upon general and subjective words such as "without reasonable basis" and "arbitrary" which are subject to many differences of opinion. But they do state affirmatively the strong presumption of validity which attaches to legislation, and they do indicate how clearly the burden of proof must be borne by the attacking party.

Our very existence as a Nation and a State is founded upon a balance of powers between 3 equal and coordinate branches of government. The enormous power vested in the judiciary to declare unconstitutional a statute duly passed by the legislative branches is one to be exercised only when the violation is clear. *Kelley* v. *Judge of Recorder's Court of Detroit,* 239 Mich 204 (53 ALR 273).

Mr. Justice Holmes, writing in *Blodgett* v. *Holden, Collector,* 275 US 142, 147, 148 (48 S Ct 105, 72 L ed 206), said:

"Although research has shown and practice has established the futility of the charge that it was a usurpation when this court undertook to declare an act of congress unconstitutional, I suppose that we all agree that to do so is the gravest and most delicate duty that this court is called on to perform."

In dealing with our present case, we have no exact precedent to guide us. As far as the briefs and our research advise us, this is the first such attack on the particular type of classification involved.

Indeed, for half a century, the constitutional attacks upon workmen's compensation statutes have generally come from the other direction, with employers complaining that such statutes were violative of the Fourteenth Amendment.

Interestingly enough, many of these attacks were based upon the same general legal proposition as is the current appeal.

There are compendious annotations concerning the courts' rejection of the argument of unconstitutionality because the employer belonged to a covered classification when all employers were not covered. 28 ALR 1222; 35 ALR 1061; 53 ALR 1290.

Thus, where a statute made injuries in extrahazardous occupations compensable, the statute was attacked because it operated unequally in relation to such industries, particularly where employees in such hazardous industries were granted compensation when injured in nonhazardous work. The court held the classification thus interpreted not offensive to the Fourteenth Amendment. *State, ex rel. Davis-Smith Co.,* v. *Clausen,* 65 Wash 156 (117 P 1101, 3 NCCA 599).

Again, in 1918, a workmen's compensation statute, applicable to Alaska, in its terms applied only to mining concerns employing 5 or more, but allowed compensation to employees of those concerns not remotely engaged in mining. The court held the classification reasonable and a "matter for legislative discretion." *Johnston* v. *Kennecott Copper Corporation* (CCA 9), 160 CCA 417 (248 F 407).

See, also, *Jeffrey Manfg. Co.* v. *Blagg,* 235 US 571 (35 S Ct 167, 59 L ed 364).

And in the first case upholding New York's workmen's compensation statute, *New York Central R. Co.* v. *White,* 243 US 188 (37 S Ct 247, 61 L ed 667, LRA1917D, 1, Ann Cas 1917D, 629), the supreme court of the United States held exclusions of farm laborers and domestic servants not to represent an arbitrary classification for purposes of the "equal protection" clause.

Similar attacks upon Michigan unemployment compensation statutes because of exemption of some

employers with less than a specified number of employees were similarly rejected—the classification by number of employees being held not constitutionally unreasonable. *Godsol* v. *Unemployment Compensation Commission,* 302 Mich 652 (142 ALR 910).

In the first case (filed, incidentally, by an employee) to pass upon and uphold the constitutionality of the Michigan workmen's compensation act, this Court held that portions of the statute which exempted household servants, farm laborers, and casual employees did not occasion the statute to be violative of the equal protection principle of the Constitution. *Mackin* v. *Detroit-Timkin Axle Co.,* 187 Mich 8.

In the *Godsol, Mackin,* and *Kelley Cases, supra,* it was firmly established that the legislature could attack 1 or several evils without having its statutory effort fail because it did not attack all of the evils in the field.

Indeed, we are led to wonder whether, absent this legislative power of exception and exemption by classification, any of the great social legislation of our time could ever have been written upon the books. Certain it is that the act we deal with here is entirely a legislative creature, and that in its original form it was far less inclusive than it is at present. The relationship of the act to the silicosis problem offers illustration.

In the form in which the workmen's compensation act was originally passed, there was no provision at all for compensation for disability due to silicosis.

The progression from the first act to the present is shown below:

PA 1912 (1st ex sess), No 10, no provision at all for any occupational diseases.

PA 1937, No 61, added part 7 of the act to provide compensation for 31 "occupational diseases" listed in a schedule. The schedule included silicosis *as a*

*result of mining;* pneumoconiosis which resulted from quarrying, cutting, crushing, grinding, or polishing of metal; stone workers' or grinders' phthisis, et cetera. (Part 7, § 2.) This act also provided compensation on a sliding scale, increasing each month of coverage, up to a maximum of $3,000.

PA 1943, No 245, amended part 7, § 2, *supra,* by eliminating the schedule of occupational diseases and providing that any disabling *disease* (as well as any other disability) should be treated as the happening of a personal injury within the meaning of the act. (Part 7, §§ 1, 2.) This act provided the first coverage available to general foundry workers. It retained the sliding scale, but increased the maximum to $4,000.

PA 1945, No 318, raised the maximum to $6,000.

PA 1951, No 278, raised the maximum to $10,500.

Tests of the specific silicosis provisions in workmen's compensation statutes have not been numerous.

Statutory classifications entirely excluding partially disabled silicosis victims from compensation have been upheld against constitutional attack in *Del Busto* v. *E. I. Dupont De Nemours & Co.* (1938), 167 Misc 920 (5 NYS2d 174), affirmed (1940), 259 App Div 1070 (21 NYS2d 417); *Moffett* v. *Harbison-Walker Refractories Co.* (1940), 339 Pa 112 (14 A2d 111); *Cifolo* v. *General Electric Co.* (1953), 305 NY 209 (112 NE2d 197), affirming (1952), 279 App Div 884 (110 NYS2d 759), certiorari denied (1953), 346 US 874 (74 S Ct 124, 98 L ed 382).

See, also, *Michigan Foundry Workers Union* v. *Enterprise Foundry Co.,* 321 Mich 265.

In the case closest to our current fact situation, a dependent wife in Ohio sought recovery of compensation which was denied because her deceased husband had been injuriously exposed to silica dust in his employment in Ohio for less than 5 years after

the effective date of a special schedule of benefits for victims of silicosis. The Ohio supreme court rejected an attack upon the silicosis limitations, based on the equal protection clause, and said:

"We find nothing arbitrary or in excess of the proper scope of legislative judgment in establishing these markers, in the case of silicosis, in such a way as to make the burden upon the State insurance fund proportionate to the length of time during which the employee, while working in this State, has been exposed to the injurious silica dust, after the effective date of the act which first made silicosis compensable. Whether such a basis for computing the award was wise is not for this court to decide. The general assembly changed its determination of policy in the matter by repealing the provision here complained of after Lourin's death (118 Ohio Laws, 422). But a law's unwisdom which may occasion its repeal does not establish its unconstitutionality." *State, ex rel. Lourin,* v. *Industrial Commission of Ohio,* 138 Ohio St 618, 623, 624 (37 NE2d 595).

Plaintiff relies primarily upon *DeMonaco* v. *Renton,* 18 NJ 352 (113 A2d 782). In this case, the New Jersey supreme court held constitutionally invalid an exclusionary clause exempting sellers of newspapers from the provisions of the workmen's compensation act. Dealing with an act providing wide coverage, the New Jersey court found no rational basis for the exclusion. Interesting and challenging as this case is, it is hardly in point on our present facts which present both a legislative purpose and a legislative scheme.

The process by which victims of silicosis have been brought under Michigan's workmen's compensation coverage has been a slow and painful one. It took 31 years after passage of the Michigan workmen's compensation act to secure any sort of coverage for foundry workers. The repeatedly expressed argu-

ment against coverage was based on the years of prior exposure of employees in silica-dust-producing industries.

Larson outlines the nature of this controversy thus:

"Finally, the obstacle which has been the most practical and persistent, and which presumably accounts for the present continuance of severe limitations on silicosis benefits, is the fear that the compensation system cannot bear the financial impact of full liability for occupational diseases, simply because they are so widespread in particular industries. This difficulty appeared in its most acute form whenever a jurisdiction was confronted with the question whether it could abruptly begin to pay compensation for all total and partial disability attributable to silicosis. As investigators began to look around the granite works, mines, quarries, foundries, monument works, and other establishments where silica dust was prevalent, they were apt to discover, to their alarm, that almost everyone had silicosis in some stage or other. When a State introduced full silicosis coverage, it might discover, as Wisconsin did, that the insurance premium for monument workers, for example, promptly soared higher than the payroll itself, with the result that the entire industry was closed down. Some States met this transition problem (which to some extent may be thought of as a temporary one because of the backlog of advanced cases left over from an era of poorer preventive methods and less complete understanding of the disease) by introducing a sliding scale of silicosis benefits which would reach full size in a number of years." 1 Larson, The Law of Workmen's Compensation, § 41.20, pp 597, 598.

In an early study of the silicosis problem, an alternative solution to the step-increase treatment was proposed:

"The matter of accrued liability is probably one of the most complicated and most vexatious problems of all those incident to silicosis as an industrial disease. The far-reaching effects of the disease, particularly in its economic manifestations, make the accrued-liability problem one of paramount importance and one which distinguishes silicosis from the majority of occupational diseases.

"After considerable study and discussion of this matter, the subcommittee believes that accrued liability, at least in part, should be recognized as a public liability and that the funding of any statutory requirement to meet this liability should not be entirely a direct assessment upon the industries or employees involved.

"Whatever the means used, it appears that some degree of assumption of the accrued liability must be made by government in order to satisfactorily meet the problem." National Silicosis Conference, United States Department of Labor (1938), Bulletin 21, pt 3, p 11.

When, however, in Michigan, a governor-appointed commission of inquiry reported on occupational disease coverage, its report and recommendations as to silicosis included the following:

"It must be borne in mind that if the cost of compensation insurance is increased to too great an extent in Michigan, it may not only force certain industries out of the State, but older men and those who have been engaged in the particular industries affected are apt to find themselves without work.

"We have been assured that the bill which we propose, while it will in some industries result in a considerable increase in the insurance premiums, will not be confiscatory.    *    *    *

"The matter of accrued liability arises. We mean that when the act becomes effective there will be workmen who will have been exposed to an occupational disease for quite some time, perhaps years, before the act becomes effective, and disability may

result within a very short period of time after the act becomes law. We recommend that the provisions of the New York act be followed; namely, if disability or death occurs during the first calendar month in which the act becomes effective, total compensation to be paid should be limited to $500; if either occurs during the second calendar month, the amount to be paid should not exceed $550, and thereafter the total of compensation payable for disability or death should increase at the rate of $50 for each calendar month until the limits provided in the compensation act for accidents be reached, excepting that in cases of disability or death due to silicosis and other dust diseases the maximum should be $3,000."*

The legislature, in the succeeding year and years, has obviously chosen to follow the reasoning of this report. The fact that the fears of the commission of inquiry may have been exaggerated, and that there was what appears to us a better alternative available in the department of labor conference report, does not remove all rational basis from the legislative scheme which Michigan actually adopted.

In this case, we deal with a compensation claim based upon an employment of 23 years' exposure to silica dust in a foundry. The employment began in 1924. For 19 of these years of exposure, there was no law which provided any form of recovery for the disease which ultimately killed decedent as to the occupation in which he was employed. In 1943, as indicated above, the Michigan workmen's compensation act was first amended to provide coverage for general foundry employment. This amendment set a maximum of recovery at $4,000.

Decedent worked for 4 years after passage of the statute which first gave him any protection. During these 4 years, the workmen's compensation statute was again amended in 1945 to establish the maximum of $6,000 which, after his disability in 1947, decedent

* See House Journal, 1937, pp 158–160.—REPORTER.

was paid. At that time, the workmen's compensation act provided a maximum of $7,600 in possible benefits to a workman, with 1 dependent, suffering death from other types of personal injuries. CL 1948, § 412.5 (Stat Ann 1947 Cum Supp § 17.155).

One subsequent amendment, PA 1951, No 278 (CLS 1956, § 417.4 [Stat Ann 1959 Cum Supp § 17.223]), has raised the maximum to $10,500 for silicosis death, whereas, for other disease- or injury-induced occupational deaths, involving 1 dependent, the maximum is now $14,850. CLS 1956, § 412.5 (Stat Ann 1959 Cum Supp § 17.155).

The legislative scheme as exemplified in the silicosis amendments included both monthly gradations and overall maximum limitations on benefits designed to lessen the economic impact on industry of accumulated exposure.

This was recognized in the portion of the opinion of the appeal board upon which appellant depends:

"The limitation in section 4 arose out of the original fear of accrued liability in dust disease cases. The special treatment of such cases was certainly reasonable in the beginning. However, more than 21 years have passed since that time. Without question the purpose of the limitation is obsolete."

There are no facts in this record which suggest that the classification complained of was "obsolete" as to decedent at the time of his disablement. Nor do we read the opinion of the appeal board as holding this.

The claim upon which our current appeal is based followed only 4 years of covered exposure. It is clear that application of the statutory maximum as to decedent was within the intent and purpose of the legislative scheme.

Any argument that the scheme is now "obsolete" as to future disabilities must wait consideration on

a record which presents some facts from which it might be deduced that the legislative reasoning had lost all value with passage of time and change of circumstances. See *Vigeant* v. *Postal Telegraph Cable Co.,* 260 Mass 335 (157 NE 651, 53 ALR 867); *Nashville, C. & St. L. Railway* v. *Walters,* 294 US 405 (55 S Ct 486, 79 L ed 949); *Atlantic Coast Line R. Co.* v. *Ivey,* 148 Fla 680 (5 So2d 244, 139 ALR 973).

The second question presented by appellant suggests that the legislature "wittingly or unwittingly, has abrogated such limitations." The appellant relies upon an implied repeal. The silicosis limitation is retained in the act along with the mandatory language "notwithstanding any other provisions of this act," and "in no event shall such compensation exceed." CLS 1956, § 417.4 (Stat Ann 1959 Cum Supp § 17.223). Repeal by implication requires a clear showing of legislative intent to repeal. *Washtenaw County Road Commissioners* v. *Public Service Commission,* 349 Mich 663; *Edwards* v. *Auditor General,* 161 Mich 639.

There is no such showing suggested to us here.

The third question posed by appellant is:

"Should the compensation payable to Mary Lou Gauthier be fixed in the amount and payable at the rate of compensation payable as of the date of death of her father?"

This Court has previously held that the maximum compensation for a dependent of a silicosis victim is fixed by the terms of the statute in force at the date of disablement. *Rueter* v. *Rinshed Mason Co.,* 303 Mich 550.

See, also, *Wallin* v. *General Motors Corporation,* 317 Mich 650; *Joslin* v. *Campbell, Wyant & Cannon Foundry Co.,* 359 Mich 420.

The statutory provision which establishes the maximum payments is section 4 of part 7 which provides in part:

"In the event of temporary or permanent total disability or death from silicosis or other dust disease, notwithstanding any other provisions of this act, compensation shall be payable under this part to employees or to their dependents in the following manner and amount: * * * The aggregate amount payable shall be determined by the total amount payable in the month in which disablement or death occurs. In no event shall such compensation exceed an aggregate total of $.......".* CL 1948, § 417.4 (Stat Ann 1950 Rev § 17.223).

Read alone, this section might, as appellant asserts, be considered ambiguous.

However, section 3 of part 7 contains an unmistakable reference to part 2 for determination of dependency benefits. CL 1948, § 417.3 (Stat Ann 1950 Rev § 17.222).

Further, section 2 of part 7 provides in part that "the disablement of an employee resulting from such disease * * * shall be treated as the happening of a personal injury within the meaning of this act." CL 1948, § 417.2 (Stat Ann 1950 Rev § 17.221).

In part 2, we find language which negates any possibility of construing the act to provide that the cause of action of a dependent under the Michigan workmen's compensation act is a new and different cause of action arising at the time of death:

"Questions as to who constitute dependents and the extent of their dependency shall be determined as of the date of the injury to the employee, *and their right to any death benefit shall become fixed as of such time,* irrespective of any subsequent change

---

* As of decedent's disablement in 1947, the maximum was $6,000. As of decedent's death in 1958, it was $10,500.

in conditions." (Emphasis supplied.) CL 1948, § 412.7 (Stat Ann 1950 Rev § 17.157).

"The death of the injured employee prior to the expiration of the period within which he would receive such weekly payments shall be deemed to end such disability, and all liability for the remainder of such payments which he would have received in case he had lived shall be terminated, but the employer shall thereupon be liable for the following death benefits in lieu of any further disability indemnity:

*"If the injury so received by such employee was the proximate cause of his death, and such deceased employee leaves dependents, as hereinbefore specified, wholly or partially dependent on him for support, the death benefit shall be a sum sufficient, when added to the indemnity which shall at the time of death have been paid or become payable under the provisions of this act to such deceased employee, to make the total compensation for the injury and death exclusive of medical, surgical and hospital services and medicines furnished as provided in section 4 hereof, equal to the full amount which such dependents would have been entitled to receive under the provisions of section 5 hereof, in case the injury had resulted in immediate death,* and such benefits shall be payable in the same manner as they would be payable under the provisions of section 5 had the injury resulted in immediate death." (Emphasis supplied.) CL 1948, § 412.12 (Stat Ann 1950 Rev § 17.162).

The plain purpose of this statutory language is to require giving effect to the statutory provisions as to the maximum compensation which was in effect at the time of the employee's disablement.

The cases relied upon by appellant, *Mason* v. *Michigan Trading Corporation,* 308 Mich 702, and *Lahti* v. *Fosterling,* 357 Mich 578, are not authority for a contrary result here. Each was founded upon a specific legislative intent found in the sections

construed to make liberalized burial or medical schedules effective as to cases wherein the injury preceded the liberalizing amendment. Our current situation, on the other hand, is very similar to that which faced the supreme court of New Hampshire in *Coté* v. *Bachelder-Worcester Co.,* 85 NH 444 (160 A 101, 82 LRA 1239). Were legislative amendment to specify application of statutory benefits to a dependent of a decedent as of the time of his death, rather than as now provided in CL 1948, § 412.7 (Stat Ann 1950 Rev § 17.157), and CL 1948, § 412.12 (Stat Ann 1950 Rev § 17.162), *supra,* this Court would no doubt make such amendments effective as did the New Hampshire court in *Hirsch* v. *Hirsch Brothers, Inc.,* 97 NH 480 (92 A2d 402).

When called upon to interpret social legislation, this Court has sought construction which accorded both with legislative intent and the stated remedial purposes of the act in question. *Sheppard* v. *Michigan National Bank,* 348 Mich 577; *Coombe* v. *Penegor,* 348 Mich 635; *Van Dorpel* v. *Haven-Busch Company,* 350 Mich 135; *Park* v. *Employment Security Commission,* 355 Mich 103. The changes sought in this appeal would require obvious violation of legislative intent and substitution of judicial judgment for the expressed judgment of the legislature.

Affirmed. No costs, public questions being involved.

DETHMERS, C. J., and CARR, KELLY, SMITH, BLACK, KAVANAGH, and SOURIS, JJ., concurred.