GALLEGOS *v.* GLASER CRANDELL COMPANY

1. WORKMEN'S COMPENSATION—PIECEWORK FARM LABORERS—EXCLUSION—CONSTITUTIONAL LAW.

Exclusion of piecework farm laborers from coverage under the Workmen's Compensation Act, while providing coverage to permanent salaried or wage-earning farm laborers, is not unconstitutional as a restriction on the constitutional right to travel since the exclusion applies to residents and nonresidents alike, the act cannot be said to have only the purpose of chilling the right to travel, and all common-law remedies remain intact (MCLA § 418.115).

2. COURTS — COURT OF APPEALS — STATUTES — CONSTITUTIONALITY — AMENDED STATUTES.

The Court of Appeals had to decide independently whether exclusion of piecework farm laborers from the Workmen's Compensation Act's coverage was constitutional even though the Supreme Court of Michigan had decided that a previous section of the act excluding all farm laborers was constitutional where the exclusion of only piecework laborers was a new

REFERENCES FOR POINTS IN HEADNOTES

[1] 58 Am Jur, Workmen's Compensation § 97.
[2, 3] 58 Am Jur, Workmen's Compensation § 18 *et seq.*

enactment, because the holding of the Supreme Court was no longer applicable.

3. WORKMEN'S COMPENSATION—PIECEWORK FARM LABORERS—EXCLUSION—CONSTITUTIONAL LAW.

An amendment to the Workmen's Compensation Act providing coverage to permanent salaried or wage-earning farm laborers while excluding piecework farm laborers was not unconstitutional as an arbitrary or an unreasonable classification where a legislative committee heard testimony that the costs would be too great to grant coverage to all farm workers and because legislative reform may take one step at a time (MCLA § 418-.115).

Appeal from Workmen's Compensation Appeal Board. Submitted Division 3 June 8, 1971, at Grand Rapids. (Docket No. 10216.) Decided June 24, 1971. Leave to appeal granted, 385 Mich 786.

Frank S. Gallegos and Mary Gutierrez presented their claims for workmen's compensation against Glaser Crandell Company and Travelers Insurance Company. Compensation denied. Plaintiffs appeal. Affirmed.

*Marcus, McCroskey, Libner, Reamon & Williams* (by *J. Walter Brock*), for plaintiffs.

*Alan W. Houseman* and *Jonathan M. Rutledge* (Michigan Legal Services Assistance Program), *amicus curiae.*

*Smith, Haughey & Rice* (by *Thomas R. Tasker*), for defendants.

Before: R. B. BURNS, P. J., and FITZGERALD and J. H. GILLIS, JJ.

J. H. GILLIS, J. Plaintiffs herein are migrant workers who were employed by defendant Glaser

Crandell Company to harvest pickles in the southwestern part of the state. During that employment, and within a two-week span, each plaintiff was injured by falling on the same exterior stairway leading to living quarters supplied for them by defendant. From a denial of individual claims for benefits under the Michigan Workmen's Compensation Act, specifically MCLA § 418.115 *et seq.* (Stat Ann 1971 Cum Supp § 17.237[115] *et seq.*), leave to appeal was sought and granted.

Farm laborers such as plaintiffs herein who are compensated on a piecework basis are expressly excluded from coverage under sections (d) and (e) of the Workmen's Compensation Act.[1] The precise question then is whether the creation of classes

---

[1] MCLA § 418.115 (Stat Ann 1971 Cum Supp § 17.237[115]) states:

"(d) All agricultural employers of 3 or more regular employees paid hourly wages or salaries, and not paid on a piecework basis, who are employed 35 or more hours per week by that same employer for 13 or more consecutive weeks during the preceding 52 weeks. Coverage shall apply only to such regularly employed employees. The average weekly wage for such an employee shall be deemed to be the weeks worked in agricultural employment divided into the total wages which the employee has earned from all agricultural occupations during the 12 calendar months immediately preceding the injury, and no other definition pertaining to average weekly wage shall be applicable.

"(e) All agricultural employers of 1 or more employees who are employed 35 or more hours per week by that same employer for 5 or more consecutive weeks shall provide for such employees, in accordance with rules established by the director, medical and hospital coverage as set forth in section 315 for all personal injuries arising out of and in the course of employment suffered by such employees not otherwise covered by this act. The provision of such medical and hospital coverage shall not affect any rights of recovery that an employee would otherwise have against an agricultural employer and such right of recovery shall be subject to any defense the agricultural employer might otherwise have. Section 141 shall not apply to cases, other than medical and hospital coverages provided herein, arising under this subdivision nor shall it apply to actions brought against an agricultural employer who is not voluntarily or otherwise subject to this act. No person shall be considered an employee of an agricultural employer if the person is a spouse, child or other member of the employer's family, as defined in subdivision (b) of section 353 residing in the home or on the premises of the agricultural employer."

within the act, thereby allowing for coverage to permanent salaried or wage-earning from laborers while denying coverage to temporary piecework laborers (such as migrant workers) is such unreasonable and arbitrary discrimination as to deny the latter the equal protection of the laws guaranteed by the Fourteenth Amendment to the United States Constitution and art 1, § 2 of the Michigan Constitution.

Plaintiffs first contend, by way of an *amicus curiae* brief, that the enactment in 1969 of MCLA § 418.115 (Stat Ann 1971 Cum Supp § 17.237[115]), subsections (d) and (e), allowing coverage to certain farm laborers while excluding others, has permitted the creation of a class within a class so as to deny transient workers the coverage afforded the more stable and steadily employed farm laborers residing within the state. It is contended that such classification infringes upon plaintiffs' constitutionally guaranteed right to travel, *Shapiro v. Thompson* (1969), 394 US 618 (89 S Ct 1322, 22 L Ed 2d 600) and *Valenciano v. Bateman* (D Ariz, 1971), 323 F Supp 600, and that where the exercise of a fundamental constitutional right is impaired or penalized, a compelling state interest must be shown in order to be consistent with the equal protection clause. *Korematsu v. United States* (1944), 323 US 214 (65 S Ct 193, 89 L Ed 194); *Bates v. Little Rock* (1960), 361 US 516 (80 S Ct 412, 4 L Ed 2d 480); *Sherbert v. Verner* (1963), 374 US 398 (83 S Ct 1790, 10 L Ed 2d 965); *Shapiro v. Thompson, supra.*

As we read it, however, *Shapiro v. Thompson, supra,* deals with the effect of residence requirements which operate to deny recent migrants the receipt of those public benefits "upon which may depend the ability of families to obtain the *very means to subsist*—food, shelter, and other necessities of life".

(Emphasis supplied.)    394 US at 627 (89 S Ct at 1327, 22 L Ed 2d at 611).    The United States Supreme Court held that:

"[N]either deterrence of indigents from migrating to the state nor limitation of welfare benefits to those regarded as contributing to the state is a constitutionally permissible objective."    394 US at 633 (89 S Ct at 1331, 22 L Ed 2d at 614).

Similarly, in *Vaughan* v. *Bower* (D Ariz, 1970), 313 F Supp 37, *Gaddis* v. *Wyman* (SD NY, 1969), 304 F Supp 717, and *Valenciano* v. *Bateman, supra,* courts have held that indigents could not be "fenced out" by residence requirements which served to deny those benefits essential to the preservation of life and health, *i.e.,* "fundamental public benefits." We do not believe that the operation of subsections (d) and (e) of MCLA § 418.115 of the Michigan Workmen's Compensation Act serves to "fence out" migrants by denying them the essentials of life and health.    The act applies to residents and nonresidents alike, and it cannot be said that it has "no other purpose  *  *  *  than to chill the assertion of constitutional rights [in this instance the right to travel] by penalizing those who choose to exercise them  *  *  *  . *United States* v. *Jackson* (1968), 390 US 570, 581 (88 S Ct 1209, 1216; 20 L Ed 2d 138, 147." *Shapiro* v. *Thompson, supra,* 394 US at 631 (89 S Ct at 1329, 33 L Ed 2d 613).    Inasmuch as all common-law remedies remain intact, it does not appear that exclusion of piecework farm laborers from coverage under the Workmen's Compensation Act is an infringement on plaintiffs' constitutional right to travel.

Both parties place emphasis on the case of *Mackin* v. *Detroit-Timkin Axle Company* (1915), 187 Mich 8, which held that the original total exclusion

of farm laborers from the Workmen's Compensation Act was constitutional. Defendant points to that holding as precedent for the constitutionality of the present exclusion of piecework farm laborers. Plaintiffs, however, argue that since the recent enactment of MCLA § 418.115 (Stat Ann 1971 Cum Supp § 17.237[115]), which repealed the former totally exclusionary section, the holding of *Mackin* v. *Detroit-Timkin Axle Company, supra,* is no longer applicable and this Court is free to consider anew the question of denial of equal protection.

In this regard we agree. Since the Legislature has now seen fit to divide an entire class into smaller units, *Mackin* v. *Detroit-Timkin Axle Company, supra,* is no longer controlling and this Court must independently determine whether the classifications of sections (d) and (e) of MCLA § 418.115 (Stat Ann 1971 Cum Supp § 17.237[115]) are totally without reason and, therefore, invalid. However, in making such determination, we are by no means deprived of sound judicial precedent to guide us in reaching a decision.

*Mackin* v. *Detroit-Timkin Axle Company, supra,* 24, as an initial guide, states that:

"The law is unquestionable that it is within the power of the legislature to classify both employers and employees, if the classification is not fanciful or arbitrary and for reasons of public policy, is based upon substantial distinctions, is germane to the object sought to be accomplished by the act, not limited to existing conditions only, and applies impartially and equally to each member of the class."

In *Haynes* v. *Lapeer Circuit Judge* (1918), 201 Mich 138, 141, 142, the Court stated that if legislation

"fails to include and affect alike all persons of the same class, and extends immunities or privileges to one portion and denies them to others of like kind, by *unreasonable or arbitrary subclassification*, it comes within the constitutional prohibition against class legislation." (Emphasis supplied.)

However, the Supreme Court later clarified this in *Kelley* v. *Judge of Recorder's Court of Detroit* (1927), 239 Mich 204, 215:

" 'A statute does not violate the equal protection clause merely because it is not all-embracing. * * * A State may properly direct its legislation against what it deems an existing evil without covering the whole field of possible abuses. * * * The statute must be presumed to be aimed at an evil where experience shows it to be most felt, and to be deemed by the legislature coextensive with the practical need; and is not to be overthrown merely because other instances may be suggested to which also it might have been applied; that being a matter for the legislature to determine unless the case is very clear. * * * And it is not open to objection unless the classification is so lacking in any adequate or reasonable basis as to preclude the assumption that it was made in the exercise of the legislative judgment and discretion.' "

Further recognition of classifications and even subclassifications is found in *Gauthier* v. *Campbell, Wyant & Cannon Foundry Company* (1960), 360 Mich 510, 513, a case which the Court itself stated "represents a tragic instance of *failure* of the Michigan Workmen's Compensation Act *adequately* to protect a victim of a death occasioned in the industrial process". (Emphasis supplied.) To classify the industrial disability attributable to silicosis differently from other industrial and dust-related disabilities was, it seems, the creation of a class within

a class. Yet the Supreme Court upheld the distinction and, after reiterating the standards by which statutory classifications are to be tested (see *Naudzius* v. *Lahr* [1931], 253 Mich 216) concluded that:

" * * * the legislature could attack 1 or several evils without having its statutory effort fail because it did not attack all of the evils in the field.

"Indeed, we are led to wonder whether, absent this legislative power of exception and exemption by classification, any of the great social legislation of our time could ever have been written upon the books. Certain it is that the act we deal with here is *entirely a legislative creature,* and that in its original form it was far less inclusive than it is at present." (Emphasis supplied.) *Gauthier* v. *Campbell, Wyant & Cannon Foundry Company, supra,* p 517.

Recently, in *Wolodzko* v. *Wayne Circuit Judge* (1969), 382 Mich 528, 533, the Supreme Court, in adopting the holding of *McGowan* v. *Maryland* (1961), 366 US 420 (81 S Ct 1101, 6 L Ed 2d 393), stated that:

" 'State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.' "

An interesting footnote appearing in *McGowan* v. *Maryland, supra,* at 426 (81 S Ct at 1105, 6 L Ed 2d at 399), and recited as a footnote to *Wolodzko* v. *Wayne Circuit Judge, supra,* p 534, reads:

" 'More recently we declared:

" 'The problem of legislative classification is a perennial one, admitting of no doctrinaire definition. Evils in the same field may be of different

dimensions and proportions, requiring different remedies. Or so the legislature may think. *Tigner* v. *Texas* (1940), 310 US 141 (60 S Ct 879, 84 L ed 1124). Or the reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind. *Semler* v. *Oregon State Board of Dental Examiners* (1935), 294 US 608 (55 S Ct 570, 79 L ed 1086). The legislature may select one phase of one field and apply a remedy there, neglecting the others. *American Federation of Labor* v. *American Sash & Door Co.* (1949), 335 US 538 (69 S Ct 258, 93 L ed 222). The prohibition of the equal protection clause goes no further than the *invidious discrimination.'    Williamson* v. *Lee Optical of Oklahoma, Inc.* (1955), 348 US 483, 489 (75 S Ct 461, 99 L ed 563, 573). (Emphasis added.)"

In the Report of Special Interim Committee on Workmen's Compensation, 1 House Journal, 1965, pp 77, 78, we find that:

"The committee heard testimony alleging that the costs would be prohibitive to bring all agricultural workers within the compensation act. However, there is a strong argument for bringing permanent agricultural employees and domestic servants under the purview of the compensation law."

In view of this, it cannot be said that the legislative decision to amend the act so as to include certain farm laborers while continuing to exclude others was arbitrary or totally without reason. Much as we dislike the unfortunate conditions of migrant workers, in view of the extensive judicial precedent, it would be a usurpation of legislative powers if we were to interfere without clear authority for doing so.

"Our very existence as a nation and a state is founded upon a balance of powers between 3 equal

and coordinate branches of government. The enormous power vested in the judiciary to declare unconstitutional a statute duly passed by the legislative branches is one to be exercised only when the violation is clear." *Gauthier* v. *Campbell, Wyant & Cannon Foundry Company, supra,* p 515.

In upholding the constitutionality of subsections (d) and (e) of the Workmen's Compensation Act (MCLA § 418.115) *i.e.,* the exclusion of piecework farm laborers, we in no way imply approval of the plight often inflicted on these less fortunate citizens of humanity. In the report of the President's Commission on Migratory Labor, *Migratory Labor in American Agriculture* (1951), p 16, it was stated:

"Beyond wanting migrants to be available when needed and to be gone when not needed, they are expected to work under conditions no longer typical or characteristic of the American standard of life. In a period of rapidly advancing job and employment standards, we expect them to work at employment which, for all practical purposes, has no job standards."

We hold that the exclusion from coverage of the plaintiffs as found in subsections (d) and (e) of the Workmen's Compensation Act (MCLA § 418.115) does not violate their guaranteed rights to equal protection of the laws. Therefore, we affirm the decision of the Workmen's Compensation Appeal Board.

All concurred.