## WHITE v MOTOR WHEEL CORPORATION

### OPINION OF THE COURT

1. STATUTES—FAIR EMPLOYMENT PRACTICES ACT—CONSTRUCTION.

   Procedural, as well as substantive, provisions of the Michigan State Fair Employment Practices Act should be construed liberally, so as to effect the law's remedial purposes; the statute is designed to redress existing grievances and introduce regulations conducive to the public good and is deemed a remedial statute (MCLA 423.301 *et seq.*).

2. CIVIL RIGHTS—CIVIL RIGHTS COMMISSION—DUTY OF COMMISSION—CONSTITUTIONAL LAW.

   The duty of the State Civil Rights Commission is to investigate alleged discrimination against any person because of religion, race, color or national origin in the enjoyment of the civil rights guaranteed by law and by the constitution and to secure the equal protection of such civil rights without such discrimination (Const 1963, art 5, § 29).

3. PLEADING—COMPLAINTS—VERIFICATION—COURT RULES.

   The court rule requiring verification of civil complaints mandates substantial rather than absolute compliance; noncompliance may be remedied where injustice might otherwise occur (GCR 1963, 114.2).

4. CIVIL RIGHTS—CIVIL RIGHTS COMMISSION—STATUTES—PLEADING—FAIR EMPLOYMENT PRACTICES ACT.

   Pleadings in the administrative process are less important than trial pleadings, especially in reference to the civil rights com-

REFERENCES FOR POINTS IN HEADNOTES

[1] 15 Am Jur 2d, Civil Rights § 59.

   Fair employment statutes designed to eliminate racial, religious, or national origin discrimination in private employment. 44 ALR2d 1138.

[2] 15 Am Jur 2d, Civil Rights § 11 *et seq.*

[3] 61 Am Jur 2d, Pleading § 343.

[4–6] 15 Am Jur 2d, Civil Rights § 76.

mission's enforcement of the fair employment practices act (MCLA 423.307[a]).

5. CIVIL RIGHTS—CIVIL RIGHTS COMMISSION—COMPLAINTS—STATUTES —FAIR EMPLOYMENT PRACTICES ACT.

An unsworn complaint in writing presenting facts which allege a discriminatory act filed with the State Civil Rights Commission within 90 days after the act, constitutes the only procedural requirement for initiating action by the commission; a statute requires that a verified complaint be filed, but the complaint may be verified retroactively, even after expiration of the 90-day period (MCLA 423.301 *et seq.,* 423.307).

DISSENT BY QUINN, P. J.

6. CIVIL RIGHTS—CIVIL RIGHTS COMMISSION—COMPLAINTS—VERIFIED COMPLAINTS—STATUTES.

*The particulars of an alleged violation of the Michigan State Fair Employment Practices Act were not timely set forth as required by statute in a complaint to the State Civil Rights Commission where they are found in an unsworn letter to the commission which does not allege a firing based on discriminatory reasons and a verified complaint filed more than 90 days after the alleged unlawful act which so alleges (MCLA 423.307[b]).*

Appeal from Ingham, Jack W. Warren, J. Submitted May 13, 1975, at Lansing. (Docket No. 21442.) Decided September 11, 1975. Leave to appeal denied, 395 Mich 811.

Complaint by Thomas E. White and the State Civil Rights Commission on relation of Thomas E. White against Motor Wheel Corporation to establish that race was a factor in defendant's discharge of plaintiff Thomas E. White from employment. Referee's decision in favor of plaintiffs. Order upholding the ruling of the referee issued by plaintiff State Civil Rights Commission. Defendant appealed to circuit court. Commission order vacated and accelerated judgment for defendant. Plaintiffs appeal by leave granted. Reversed and remanded for trial.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Michael A. Lockman* and *Melba A. Kopel,* Assistants Attorney General, for plaintiffs.

*Foster, Lindemer, Swift & Collins, P. C.* (by *David C. Coey, Philip T. Carter,* and *Clifford D. Weiler),* for defendant.

Before: QUINN, P. J., and BRONSON and N. J. KAUFMAN, JJ.

N. J. KAUFMAN, J. Plaintiffs appeal from a June 12, 1974 order and judgment of the Ingham County Circuit Court which granted an accelerated judgment against them. The trial court's judgment vacated all determinations, findings and orders entered by plaintiff Michigan Civil Rights Commission (Commission) which had determined defendant to have discriminated against plaintiff Thomas White in violation of the fair employment practices act (FEPA), 1955 PA 251, as amended 1972 PA 267, MCLA 423.301 *et seq.;* MSA 17.458(1) *et seq.* This Court granted plaintiffs' application for leave to appeal on November 4, 1974.

The sole question presented for appellate review is whether the trial court erred in holding that defendant was entitled to an accelerated judgment because plaintiff White had not filed his complaint within the time period prescribed by § 7(b) of the FEPA, MCLA 423.307; MSA 17.458(7). Section 7(b) provides:

"Any individual claiming to be aggrieved by an alleged unlawful employment practice may, by himself or his agent, make, sign and file with the board, *within 90 days after the alleged act of discrimination, a verified complaint in writing,* which shall state the name and address of the person, employer, labor organization or

employment agency alleged to have committed the
unlawful employment practice complained of, and
which shall set forth the particulars thereof and contain
such other information as may be required by the
board. Any employer whose employees, or some of
whom, refuse or threaten to refuse to cooperate with
the provisions of this act, may file with the board a
verified complaint asking for assistance by conciliation
or other remedial action." (Emphasis supplied.)

The allegedly discriminatory act of defendant
which gave rise to this cause of action was the
firing of plaintiff White by defendant, his employer,
on June 23, 1969. Mr. White complained of
his discharge in an unsworn letter which was
received by the Commission on July 14, 1969. The
letter alleged that plaintiff was a Negro, that on
June 9, 1969 he had been 15 minutes late in
returning from his lunch period, that on the next
day he had broken his toe at work and had been
on sick leave until June 23, 1969, and that when
he had returned to work he had been discharged.
Attempts were made by the Commission to contact
Mr. White by telephone, but none were successful.
On December 3, 1969, White appeared at the
Lansing office of the Commission and there completed
and verified a complaint charging that defendant
discharged him on the basis of race. The
complaint was accepted by the Commission.

Having investigated Mr. White's complaint, the
Commission, on August 18, 1970, issued a formal
charge against Motor Wheel, which alleged, in
substance, that race was a factor in the discharge
of White. On September 3, 1970, defendant filed a
motion to dismiss and/or strike the charge on the
basis that the complaint was filed more than 90
days after the alleged act of discrimination and,
thus, under FEPA, § 7(b), the Commission had no

jurisdiction. The Commission contended that the July 14, 1969 letter satisfied the time requirements of the statute.

A hearing was conducted by a referee on December 16, 1970. In his opinion of January 31, 1973, the referee denied defendant's motion to dismiss and/or strike. The referee accepted the Commission's contention that the letter did in fact satisfy the statutory requirements. On the merits of the matter, the referee found that the Commission's charge of unlawful discrimination had been established.

After argument before the Commission, on February 27, 1973, the Commission issued an order dated November 27, 1973, in which it upheld the ruling of the referee. Defendant filed a claim of appeal, on December 5, 1973, in the Ingham County Circuit Court. On February 15, 1974, it filed a motion for accelerated judgment, GCR 1963, 116.1(5), averring that the complaint originally filed by the claimant had been untimely. It alleged that the Commission was without jurisdiction in the matter and that it had acted outside the scope of its authority. In granting defendant's motion, the court expressed a belief that lay parties should be given the opportunity to be heard. However, the court felt bound by the 90-day requirement of the FEPA. The court stated:

"The provision which we're first concerned with here provides that a verified complaint * * * [m]ust be filed within 90 days after the alleged act of discrimination. This individual did not cause to be filed within 90 days after the alleged act of discrimination a *verified complaint*. It therefore follows that there is no bases [sic] in law for proceeding with this matter. * * * Here it appears that the complaint wasn't gotten on file apparently until December 3rd." (Emphasis supplied.)

On appeal, the major conflict is over the interpretation of the term "verified complaint" as it is used in § 7(b) of the FEPA. Plaintiffs contend that the statute be interpreted liberally so as to fulfill its purposes. They argue that the remedial purposes of the statute will be best served by reading § 7(b) to allow the filing of an unsworn complaint within 90 days after the discriminatory act and to permit the verification to occur at some later time, prior to the initiation of a Commission investigation. Defendant claims that a legislature may impose reasonable regulations on a party's exercise of a statutory right. According to defendant's theory, an individual who sues to enforce such a right must be rigidly restricted by the time limits made a part of the statute which created the right. *Pompey v General Motors Corp,* 385 Mich 537; 189 NW2d 243 (1971).

For several reasons, we agree with plaintiffs. We find that the unsworn letter sent by Mr. White within 90 days after the alleged discriminatory act complied with the time limit for filing a charge under the FEPA and that his later verification satisfied the verification requirement of the statute. We find that the "charge" was filed on July 14, 1969, the date Mr. White's letter reached the Commission, not on December 3, 1969, the date of the verification. As such, we hold that the trial court erroneously dismissed plaintiffs' complaint.

First, because it is designed to "redress an existing grievance" and to "introduce regulations conducive to the public good", the fair employment practices act must be deemed a remedial statute. *In re School District No 6, Paris and Wyoming Townships, Kent County,* 284 Mich 132, 144; 278 NW 792 (1938). As a remedial statute, we must construe the FEPA liberally so as to assure the

effectuation of its stated remedial purposes. *Gauthier v Campbell, Wyant & Cannon Foundry Co,* 360 Mich 510; 104 NW2d 182 (1960). This liberal construction applies to procedural as well as substantive provisions of the law. *Rookledge v Garwood,* 340 Mich 444, 453; 65 NW2d 785 (1954). The FEPA's remedial nature and socio-legal purposes are manifested in the statements made at the 1961 Constitutional Convention by the drafters of article 5, section 29 of the Michigan Constitution.[1] That provision established the Civil Rights Commission, one of whose functions was the enforcement of the FEPA's proscription of discrimination in employment. The drafters stressed the "vital character of the rights involved and the necessity for the protection of such rights against discrimination * * * ". 2 Official Record, Constitutional Convention 1961, p 1922. They noted that:

" * * * it is vital to the future health and wellbeing of our state that we eliminate this discrimination, that we make certain it is going to be eliminated in all fields." *Id.* at 1933.

Second, analagous Michigan decisions manifest a policy of avoiding a technical enforcement of verification requirements. This Court has ruled that GCR 1963, 114.2 mandates substantial, rather than absolute, compliance with the requirement

[1] "There is hereby established a civil rights commission which shall consist of eight persons, not more than four of whom shall be members of the same political party, who shall be appointed by the governor, by and with the advice and consent of the senate, for four-year terms not more than two of which shall expire in the same year. It shall be the duty of the commission in a manner which may be prescribed by law to investigate alleged discrimination against any person because of religion, race, color or national origin in the enjoyment of the civil rights guaranteed by law and by this constitution, and to secure the equal protection of such civil rights without such discrimination." Const 1963, art 5, § 29.

that civil complaints be verified. *Jackson v Detroit Bd of Education,* 18 Mich App 73, 80; 170 NW2d 489 (1969). The case of *In re Fair Estate,* 55 Mich App 35; 222 NW2d 22 (1974), is especially instructive. In *Fair,* plaintiff failed to verify a complaint filed in the Court of Claims and attempted to correct this failure by verifying it after the statute of limitations had run. This Court reversed an accelerated judgment against plaintiff. It held that plaintiff's failure to verify the complaint within the statutory time period was not fatal to his claim where the absence of verification did not surprise or prejudice the defendant. The Court stressed a policy of avoiding a narrow reading of the verification requirement where "injustice * * * may occur if noncompliance with a technical aspect of the notice requirement is not allowed to be remedied". *Id.* at 39.

The Supreme Court in *Lisee v Secretary of State,* 388 Mich 32; 199 NW2d 188 (1972), held that a failure by plaintiff to strictly comply with the notice provisions of a remedial act will not bar his claim. The Court ruled that the notice requirement of the Motor Vehicle Accident Claims Act, 1965 PA 198; MCLA 257.1101 *et seq.;* MSA 9.2801 *et seq.,* is not jurisdictional. Inasmuch as actual notice was given, the statutory notice was held not to be necessary. The Court reasoned that because the act is remedial legislation designed to aid injured parties as soon as possible, it should not be read so technically as to defeat the act's purpose. *Id.* at 46.

Third, the fact that we are dealing with rules for administrative procedure, rather than with rules for judicial pleadings, militates against defendant's rigid construction of the statute. Section 7(b) is concerned with bringing an action before the Com-

mission. The General Court Rules govern judicial relief sought to enforce Commission rulings. As Professor Kenneth Culp Davis notes, administrative pleadings are less important than trial pleadings:

"The most important characteristic of pleadings in the administrative process is their unimportance. And experience shows that unimportance of pleadings is a virtue." 1 Davis, Administrative Law Treatise, § 8.04, p 523 (1958).

This is especially true in reference to the Civil Rights Commission. The Commission's enforcement of the FEPA is designed to be accomplished primarily by "informal methods of persuasion and conciliation". MCLA 423.307(a); MSA 17.458(7)(a). The emphasis is on "informal". The FEPA procedure was designed to be an informal, speedy, alternative procedure to more formal, costly litigation. Excessive formalism would significantly hinder the work of the Commission in investigating complaints and in securing acceptable settlements.

Fourth, and most importantly, we find that the filing of an unsworn letter combined with a retroactive verification is consistent with the purposes of the FEPA and is sanctioned by the legislative intent behind the FEPA. In addition, and equally as important, we find that plaintiff White's failure to verify the complaint until after the 90-day period in no way prejudiced defendant. The fair employment practices act was intended to protect individuals like plaintiff White who often fear the legal system and cannot afford the resources and time required to litigate a claim in a court of law. The act provides a speedy, simple procedure for individuals like Thomas White who do not understand the intricacies of the legal system and who

need a quick disposition of their grievances. The 90-day period for filing a grievance insures that the Commission's action occurs when the facts of the alleged discrimination are still current. The time limit also causes the Commission's investigation to begin before the discrimination has resulted in the complainant's having suffered so much damage that a settlement becomes impossible and a remedy difficult.

Given the salutary purposes of the FEPA, the only procedural requirement which should initiate Commission action is a timely presentation of facts alleging a discriminatory act. Plaintiff White's letter to the Commission contained all that should be required of a complainant. His letter contained sufficient facts from which the Commission could reasonably infer that he was alleging a firing based on discriminatory reasons. We find this allegation to have been a "complaint" within the intent of the statute. Plaintiff sent the letter within a month of his firing, at a time when the facts were still current and when an agreement to reinstate him was most feasible. The delay in processing the action and in rendering a decision was caused by the Commission, not by the complainant. We do not believe that the Commission's inaction should penalize Thomas White, especially since his actions were timely and since defendant does not argue that it was prejudiced by the delay. Defendant does not claim that any evidence was lost or that its position was altered in any way because of the delay.

Plaintiff White's failure to verify the complaint until after the 90-day period also did not result in any prejudice to defendant. Verification is required to prevent reckless complaints made solely to harass. This purpose was satisfied here because Com-

mission action did not commence until the original complaint had been verified. How the charging party puts his complaint in the Commission's hands is irrelevant to any rights of defendant. As long as the Commission gives a defendant adequate and timely notice of the charges and an opportunity to answer them, the manner of notice to the Commission will be irrelevant to defendant's substantive rights.

Relevant Federal decisions supply additional bases for our holding that verification of a timely complaint may occur after the time period has run. Federal decisions have uniformly ruled that the requirement of the Federal Equal Employment Opportunity Act of 1972, 78 Stat 253 *et seq.* (1964); 86 Stat 103 *et seq.* (1972); 42 USC 2000e *et seq.* (Title VII of the Civil Rights Act of 1964), that charges be "in writing under oath or affirmation" is satisfied by an unsworn charge filed within the statutory time period and later affirmed. 78 Stat 259, 260 (1964); 86 Stat 104 (1972), 42 USC 2000e-5(b).[2] Defendant distinguishes the Federal cases by claiming that their holdings are based on an Equal Employment Opportunity Commission (EEOC) regulation, 29 CFR 1601.11(b) (1974), which allows

[2] *Choate v Caterpillar Tractor Co,* 402 F2d 357 (CA 7, 1968), *Jenkins v United Gas Corp,* 400 F2d 28 (CA 5, 1968), *Blue Bell Boots, Inc v EEOC,* 418 F2d 355 (CA 6, 1969), *Weeks v Southern Bell Telephone and Telegraph Co,* 408 F2d 228 (CA 5, 1969), *Georgia Power Co v EEOC,* 412 F2d 462 (CA 5, 1969), *Sanchez v Standard Brands, Inc,* 431 F2d 455 (CA 5, 1970), *EEOC v Western Publishing Co, Inc,* 502 F2d 599 (CA 8, 1974). *See also* Anno, *Time Requirements for Civil Action for Violation of Equal Employment Opportunities Provisions under § 706 of Civil Rights Act of 1964* (42 USC 2000e-5), 4 ALR Fed 833. While these cases are, of course, not binding, they are especially persuasive because they interpret Federal legislation which has the same provisions and procedures as the Michigan statute examined here. *See* DPOA v Detroit, 391 Mich 44, 53; 214 NW2d 803 (1974). Another panel of this Court per Judge R. B. BURNS has also liberally interpreted § 7(b) to effectuate the remedial purposes of FEPA. *Civil Rights Commission v Chrysler Motors Corporation,* 64 Mich App 393; 235 NW2d 791 (1975).

amendment of charges "to cure technical defects or omissions, including failure to swear to the charge". However, a reading of these decisions shows that, first, not all have been based on this rule and, second, all have founded their holdings more on the basic purposes of the Equal Employment Opportunity Act than on the EEOC regulation.

In *Choate v Caterpillar Tractor Co,* 402 F2d 357 (CA 7, 1968), the plaintiff wrote an unsworn letter claiming that she had been denied a job because of discrimination based on sex. She was contacted by the EEOC after the time period for filing had run and swore under oath that the charges in her letter were true. The district court dismissed plaintiff's complaint for lack of verification within the time period. In reversing the district court, the Seventh Circuit Court of Appeals relied on the purposes of the Civil Rights Act and used the EEOC regulation as additional support. The Court found that the verification requirement related to the administrative rather than judicial features of the statute. In deeming the requirement "directory and technical rather than mandatory and substantive", the Court stated:

"Given the fact that the administrative remedy alone may be insufficient to vindicate the rights of aggrieved parties, we believe that it would be unnecessarily harsh and in derogation of the interests of those whom the Act was designed to protect to interpret the statutory language as denying substantive rights in the district court because of procedural defects before the Commission. If the Commission undertakes to process a charge which is not 'under oath,' we perceive no reason why the district court should not treat the omission of the oath as a permissive waiver by the Commission. To deny relief under these circumstances would be a mean-

ingless triumph of form over substance." *Id.* at p 360. (Footnote omitted.)

Accord *Blue Bell Boots, Inc v EEOC* 418 F2d 355 (CA 6, 1969).

In one of the few state cases in point, the Iowa Supreme Court analyzed the role of a complaint in discrimination cases and rejected a technical interpretation. It viewed that action as:

"designed more to implement broad public policy than to adjudicate differences between private parties."

*Iron Workers Local No 67 v Hart,* 191 NW2d 758, 768 (Iowa, 1971).

The same broad public policy requires us to read the Michigan fair employment practices act so that its procedure does not unnecessarily prevent plaintiff from litigating the rights assured to him by the act. While we agree with defendant that the Legislature may condition a statutory right on a statutory time limit, in this case, we cannot interpret the time limit so as to destroy the right.

Reversed and remanded for trial. No costs, a question of statutory interpretation being involved.

BRONSON, J., concurred.

QUINN, P. J. *(dissenting).* Plaintiff White's verified complaint of December 3, 1969 charged defendant with discharging him on the basis of race. The formal charge against defendant was that race was a factor in White's discharge. On the merits, the referee found that unlawful discrimination was involved in White's discharge, and the commission affirmed that holding.

The referee and the commission held that White's letter to the commission that was received

July 14, 1969 and the verified complaint of December 3, 1969 satisfied the 90-day requirement of MCLA 423.307(b); MSA 17.458(7)(b). The majority opinion states, "[h]is letter contained sufficient facts from which the commission could reasonably infer that he was alleging a firing based on discriminatory reasons".

Attached to this dissent is a copy of the letter involved. I am unable to read it as the basis for a reasonable inference that White was alleging "a firing based on discriminatory reasons". True, the letter states that White is a Negro but nothing relates that fact to his discharge. The allegations regarding discharge are, "through the lack of misunderstanding" and "[i]t was my understanding that an employee could not be discharged from a job while still disabled".

If White's letter directly, or by reasonable inference, supported the complaint that he was discharged on the basis of race, I could agree with the majority. In my view, it does not, and I vote to affirm the trial court because MCLA 423.307(b), *supra,* requires that the complaint set forth the particulars of the alleged unlawful employment practice. If compliance with this requirement is to be found in a letter and a verified complaint, the two should conform to some extent.

### EXHIBIT A

Michigan State Civil Rights Commission
1000 Cadillac Square Building
Detroit, Michigan 48226
Gentlemen:
I, Thomas E. White a 24 year old Negro employed at Motor Wheel, would like to inform you that I

was discharged from my job on Monday, June 23, 1969, through the lack of misunderstanding.

On June 5, 1969, I went back into the palletizing area on my lunch break to study for my schooling at State Data Processing Systems for a test to be given that same day. I was 15 minutes late in returning from my lunch period to my job. Upon this occasion, my foreman informed me that I was to be docked 15 minutes. Later on that day he came back and told me to forget about the 15 minutes and handed me a grievance slip stating that I was sleeping on the job.

On the following day, Thursday, June 6, 1969, I broke my big toe on my right foot while unloading rims from a box car. I was taken over to first-aid and had x-rays of my toe. After Dr. Martin treated my injury, he informed me that I was to come to Motor Wheel every day until I was able to return to my job. I received Workmen's Compensation for the period June 6 through June 23. About two weeks after the injury, I was told my foot was well enough to return to work. I still could not wear a shoe at this time. The doctor told me to cut out the toe of my shoe and report to my job on Monday, June 23. When I returned to work on that day, I found a pink card in my rack indicating that I was to report to the Personnel Office. I called my committee in on this and we had a meeting with the Personnel Supervisor, Jimmy Yanz, and upon this date I was discharged from Motor Wheel.

It was my understanding that an employee could not be discharged from a job while still disabled. (I am still partially disabled as of this date, and I am not receiving any kind of treatment for my injury) I am now attending classes at State Data Processing Systems and I am worried about my financial

status to be able to complete my schooling to enable me to find a better job along with being able to make my regular monthly payments.

I also had an accident on October 11, 1967, in which I injured my back. After I was released to go back to work about two weeks after returning to my job I reinjured my back on a fork truck at Motor Wheel. I went back on sick leave. Instead of receiving ckecks from Workmen's Compensation, I received checks from Motor Wheel's insurance company. I received this insurance from March until about September when they discontinued sending me checks. Therefore, I went from October, 1968 until January, 1969 without pay. I also received a layoff slip in the mail during that time. I now have a lawyer on this case which is Raymond H. Rappaport *(sic).* I don't see any reason why I should have to pay a lawyer one-third of the money which is rightfully mine. At the time I hired a lawyer, I didn't know about your services.

For what I have just told you, I have witnesses on my behalf to prove what I have stated above is true. I would appreciate hearing from you as soon as possible. Thank you very much.

Sincerely,


/S/ *Thomas E. White*
1103 Willemma
Lansing, Michigan 48910
Badge #35632